SEE AMEND BRF
FILED ON 12/1/15

ACCEPTED
03-15-00447-CV
7896313
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/18/2015 7:58:22 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00447-CV

In the Court of Appeals
For the Third Judicial District of Texas
at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/18/2015 7:58:22 PM
JEFFREY D. KYLE
Clerk

**BARBARA PAMPALONE,**

Cross-Appellant

**v.**

**ERIC HINOJOSA,**

Cross-Appellee

On Appeal from the 419th Judicial District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-14-003207

## CROSS-APPELLANT'S BRIEF

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Nelia J. Robbi
State Bar No. 24052296
Joe Lea
State Bar No. 24013257
Stephanie N. Duff-O'Bryan
State Bar No. 24087448
600 Congress Avenue, Suite 2100
Austin, Texas  78701
(512) 495-6000
(512) 495-6093 FAX
nrobbi@mcginnislaw.com

ATTORNEYS FOR BARBARA PAMPALONE

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

<u>Parties to the Trial Courts Judgment</u>

Plaintiff:              Barbara Pampalone

Defendants:         Austin Capital Collision, LLC
                       Eric Hinojosa

<u>Names and Addresses of Trial and Appellate Counsel</u>

Counsel for Plaintiff:    Nelia J. Robbi
nrobbi@mcginnislaw.com
Joe Lea
jlea@mcginnislaw.com
Stephanie N. Duff-O'Bryan
sduffobryan@mcginnislaw.com
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000
(512) 495-6093 FAX

Counsel for
Defendants:         Michael Truesdale
mike@truesdalelaw.com
801 West Avenue, Suite 201
Austin, Texas 78701
(512) 482-8671
(866)-847-8719 FAX

Adam Pugh
apugh@slaterpugh.com
8400 N. Mopac Expressway, Suite 100
Austin, Texas 78759
(512) 472-2431
(512) 472-0432 FAX

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................. ii

TABLE OF CONTENTS ................................................................................... iii

INDEX OF AUTHORITIES .............................................................................. vi

STATEMENT OF THE CASE ............................................................................ 1

STATEMENT REGARDING ORAL ARGUMENT ............................................ 1

STATEMENT OF JURISDICTION ................................................................... 2

ISSUE PRESENTED ........................................................................................ 2

STATEMENT OF FACTS ................................................................................. 3

A.  Overview and the parties. ....................................................................... 3

B.  The business: Capital Collision. ............................................................. 5

C.  The loan. ................................................................................................ 5

D.  The payments: 94 monthly payments over 8 years. .................................. 7

E.  The fraud. ............................................................................................... 8

    1.  Eric Hinojosa wholly owned and controlled Capital Collision. .................... 9

    2.  Mr. Hinojosa formed a *new* company, also called Capital
        Collision, which he also wholly owned and controlled. ............................... 9

    3.  After his new company took over the business of the old
        company, Mr. Hinojosa terminated the old company. ............................... 10

    4.  Mr. Hinojosa did not tell Dr. Pampalone that he had terminated
        the company she had loaned money to. ...................................................... 10

    5.  Mr. Hinojosa terminated the old company to "close old debt,"
        but continued to send and receive correspondence related to the
        debt using the old company's address. ...................................................... 11

6.      Unbeknownst to Dr. Pampalone, Mr. Hinojosa transferred payments on the loan to an account held in the name of the old company that he had terminated and funded that account with money from the new company and his own personal funds. ....................... 12

7.      Three years after terminating the company to which Dr. Pampalone had made the loan, Mr. Hinojosa stopped paying. ................... 13

F.      The litigation. ......................................................................................... 13

SUMMARY OF THE ARGUMENT ............................................................................. 14

ARGUMENT ............................................................................................................... 17

A.      *De Novo* Standard of Review ................................................................. 17

B.      The trial court judgment should be reformed to impose liability on Eric Hinojosa because the trial court erred in failing to impose *alter ego* liability based on its factual findings and the undisputed evidence. ....................... 17

1.      The trial court correctly found that Eric Hinojosa completely owned and controlled both companies during the relevant time periods. ........................................................................................... 20

2.      The trial court correctly found that Eric Hinojosa commingled personal and corporate assets and obligations. ........................... 22

3.      Limiting liability would work an injustice because it is undisputed that Eric Hinojosa emptied the original debtor to make a new company without telling anyone. ............................ 25

4.      The requirement of fraud is established by the trial court's findings and the undisputed evidence at trial because the findings and undisputed evidence established as a matter of law (a) a fraudulent transfer under Tex. Bus. & Com. Code § 24.006(a), and (b) that Eric Hinojosa intentionally used the companies to deceive his creditor for his personal benefit. ....................... 27

     a.      Eric Hinojosa effected a fraudulent transfer under Section 24.006 of the Texas Business and Commerce Code ........................ 28

     b.      Eric Hinojosa used the companies to deceive his creditor for his personal benefit ................................................................. 30

C.      The proper remedy is to reform and render the judgment. ..................... 32

CONCLUSION ......................................................................................................... 33

PRAYER ................................................................................................................. 33

CERTIFICATE OF SERVICE ................................................................................. 35

CERTIFICATE OF COMPLIANCE ........................................................................ 36

APPENDIX .............................................................................................................. 37

# INDEX OF AUTHORITIES

**Cases**

*Castleberry v. Branscrum*, 721 S.W.2d 270 (Tex. 1986) ..................... 18, 19, 28, 30

*Dick's Last Resort of West End, Inc. v. Market/Ross, Ltd.*, 273 S.W.3d 905 (Tex. App.—Dallas 2008, pet. denied) ...................................................................30

*Dodd v. Savino*, 426 S.W.3d 275 (Tex. App.—Houston [14 Dist.] 2014, no pet.) .23

*Farr v. Sun World Savings Ass'n*, 810 S.W.2d 294 (Tex. App.—El Paso).... 20, 28, 30, 32

*Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389 (Tex. App.—Amarillo 2000, no pet.) ................................................................................... 20, 28

*Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226 (Tex. 1990) ............................ *passim*

*MBR & Associates, Inc. v. Lile*, 02-11-00431-CV, 2012 WL 4661665, (Tex. App.—Fort Worth Oct. 4, 2012, pet. denied) ....................................................22

*Phillips v. Carlton Energy Group, LLC*, No. 12-0255, 2015 WL 2148951 (Tex. May 8, 2015) ............................................................................... 1, 17, 18

*Remington Arms Co., Inc. v. Luna*, 966 S.W.2d 641 (Tex. App.—San Antonio 1998, pet. denied) ....................................................................................17

*Schlueter v. Carey*, 112 S.W.3d 164 (Tex. App.—Fort Worth 2003, pet. denied) ................................................................................................ 22, 23

*Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427 (5th Cir. 2013) ...................30

*SSP Partners v. Gladstrong Investments (USA) Corporation*, 275 S.W.3d 444 (Tex. 2008) ....................................................................................... 26, 27

*Cappuccitti v. Gulf Industrial Products, Inc.*, 222 S.W.3d 468 (Tex. App. — Houston [14th Dist.] 1994, no pet.) ................................................................ 24, 25

*Stewart & Stevenson Services, Inc. v. Serv-Tt*ech, Inc., 879 S.W.2d 89 (Tex. App.—Houston [14th Dist.] 1994, pet denied) ....................................................19

**Statutes**

Tex. Bus. & Com. Code § 24.006(a), and (b) .......................................... iv, 27, 28, 37

Tex. Bus. Org. Code § 11.052 ................................................................ 31, 37

Tex. Bus. Org. Code § 11.356 ........................................................... 26, 31, 37

Tex. Bus. Org. Code § 21.223 ........................................................... 19, 37

Texas Civil Practice and Remedies Code § 51.012 ................................................2

**Rules**

Tex. R. App. P. 43.3 ............................................................................. 32, 37

TEX. R. APP. P. 9.4(e) ..........................................................................36

TEX. R. APP. P. 9.4(i)(1) ......................................................................36

Texas Rules of Appellate Procedure 38.1, 39.1, and 39.2 ..........................................1

**Other Authorities**

6 McDonald & Carlson Tex. Civ. Prac. App. Prac. § 33:10 ...................................32

## STATEMENT OF THE CASE

Nature of the Case: Cross-Appellant, Barbara Pampalone, sued Appellant, Austin Capital Collision, LLC and Cross-Appellee, Eric Hinojosa, for breach of contract.

Parties: Cross-Appellant/Plaintiff is Barbara Pampalone

Cross-Appellee/Defendant is Eric Hinojosa

Trial Court: The Honorable Todd Wong, 419th Judicial District Court, Travis County, Texas.

Trial Court's Disposition: After a bench trial on June 8, 2015, the trial court granted judgment in favor of Barbara Pampalone and against Austin Capital Collision, LLC. The trial court found that Eric Hinojosa was not individually liable under the theory of piercing the corporate veil alleged by plaintiff. Austin Capital Collision, LLC and Barbara Pampalone filed timely notices of appeal on July 29, 2015, and on July 7, 2015, the trial court issued its findings of fact and conclusions of law.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rules of Appellate Procedure 38.1, 39.1, and 39.2, Cross-Appellant requests oral argument before this Court of Appeals. Cross-Appellant believes oral argument will assist the Court, as this appeal requests that this Court apply the standard of review adopted very recently by the Texas Supreme Court in *Phillips v. Carlton Energy Group, LLC*, No. 12-0255, 2015 WL 2148951, at *15 (Tex. May 8, 2015) in determining whether the trial court erred by not piercing the corporate veil.

## STATEMENT OF JURISDICTION

This Court has jurisdiction of this appeal pursuant to Texas Civil Practice and Remedies Code § 51.012.

## ISSUE PRESENTED

1. Whether the trial court erred in refusing to pierce the corporate veil and hold Eric Hinojosa individually liable for breach of contract.

TO THE HONORABLE THIRD COURT OF APPEALS:

## STATEMENT OF FACTS

This case presents the precise factual scenario that the alter ego doctrine was created to prevent. This is a story about a businessman, Eric Hinojosa, who found himself mired in debt that he did not want to pay, whose business was flagging, and who saw a simple way out: to go down to the Texas secretary of state, create a new LLC, and walk away debt-free, with his business still intact. 2RR:111-12, 124-25, 175-76, 217-19, 222-24, 232-34; PX-5; PX-14; Appx:2, ¶29. And at least one of Eric Hinojosa's creditors—Barbara Pampalone, a semi-retired dentist who obtained a second mortgage so that she could make an $80,000 loan to Mr. Hinojosa's first company—was none the wiser. 2RR:52-53. But, hiding behind his new LLC, Eric Hinojosa now claims that he owes Barbara Pampalone nothing.

### A.     Overview and the parties.

The parties to this appeal—Barbara Pampalone and Eric Hinojosa—have known each other since Eric Hinojosa was just a boy. 2RR:53-54. Dr. Pampalone is a widow and semi-retired dentist who has been living in Chatsworth, California for almost 40 years. 2RR:52-53; Appx:2, ¶6. Dr. Pampalone's youngest child, Erik Pampalone, and Eric Hinojosa were childhood friends—they went to elementary and high school together before Mr. Hinojosa moved to Texas with his family. 2RR:95-96. Erik and Eric remained close and, in approximately 2003,

3

they went into business together.  2RR:54-55, 96-97; Appx:2, ¶7.  That business was an auto body repair shop known as "Capital Collision."  Appx:2, ¶7.  In 2005, Dr. Pampalone loaned Capital Collision $80,000.  Appx:2, ¶9.  In accordance with the terms of the agreement between Dr. Pampalone and the company, the company immediately began repaying the loan.  Appx:2, ¶18.

Two years later, in 2007, Erik Pampalone exited the company completely, and the company, now run exclusively by Eric Hinojosa, continued to repay the loan as agreed for another 6 years.  2RR:13; Appx:2, ¶¶22, 23, 27, 31.  Only— unbeknownst to Dr. Pampalone— the company she loaned the money to in 2005 was terminated by Eric Hinojosa in 2010, but not before Mr. Hinojosa had first formed a new company (still run exclusively by him) in 2009 to take over the business and assumed name of the old company.  PX-20; PX-24; Appx:2, ¶¶30, 24, 26, 29.  Eric Hinojosa never told Dr. Pampalone that he had terminated the company she had loaned money to—and he certainly did not tell her that the reason he was terminating that old company was to "close old debt."  2RR:175-76; Appx:2, ¶28.  Instead, he kept the old company's bank accounts open, funded those accounts with money from the new company and with his own money, and continued to quietly repay the loan to Dr. Pampalone until the statutory wind up period for the old company had expired, leaving Dr. Pampalone with, presumably, no one to sue.  2RR:194-203, 248-49; Appx:2, ¶¶29, 31, 33.  Dr. Pampalone had

4

no reason to ever suspect anything was amiss until, in April 2013, the monthly payments ceased. Appx:2, ¶37; Appx: 8.

## B. The business: Capital Collision.

The business, Capital Collision, was formed by Eric Hinojosa in approximately 2002 and was structured as two corporations—Hinojosa Auto Body & Paint Inc. (Nevada) and Hinojosa Auto Body & Paint, Inc. (Texas)—operating as a general partnership—Capital Collision, GP—and had an assumed name certificate on file for and did business simply as "Capital Collision." 2RR:97-99: 2RR:171-72; Appx:2, ¶7; PX-19; PX-24; PX-27.

Mr. Hinojosa was the president and a 50% shareholder of each of the Hinojosa Auto Body & Paint, Inc. entities. 2RR:100-02; Appx:2, ¶7; PX-27; PX-28; PX-29. Mr. Pampalone joined as the vice president and other 50% shareholder of those entities. 2RR:100-02; Appx:2, ¶7; PX-27; PX-28; PX-29. Because Mr. Pampalone was still living in California, he was not involved in the day-to-day operations of the business. 2RR: 103.

## C. The loan.

In early 2005, the business had an option to purchase the land it was operating on but lacked the funds necessary to do so. 2RR:105, 176; Appx:2, ¶10. Mr. Hinojosa and Mr. Pampalone, in their capacities as corporate officers/directors, discussed the issue, and Mr. Pampalone suggested to Mr.

5

Hinojosa that he could ask his mother, Dr. Pampalone, to loan the funds to the business. 2RR:105-06; Appx:2, ¶10. Mr. Hinojosa agreed that Mr. Pampalone should ask Dr. Pampalone to make a loan to the business. 2RR:106, 110-11; Appx:2, ¶10.

Accordingly, in his capacity as vice-president of Capital Collision, Mr. Hinojosa approached Dr. Pampalone and proposed that she loan the sum of $80,000 to Capital Collision and, in exchange, Capital Collision would repay the $80,000 over a twenty-year period, plus annual interest at 7%. 2RR:59, 60, 106-07; Appx:2, ¶11.

Dr. Pampalone specifically understood this to be a loan to the business—*not* to her son personally—and further understood that the funds would be used for business purposes, including the possible purchase of land. 2RR:57, 59; Appx:2, ¶12. Dr. Pampalone had previously loaned funds to Capital Collision for business purposes in 2003 and, at the time of the loan at issue, was being repaid by Capital Collision as agreed. 2RR:61-62; Appx:2, ¶13.

Dr. Pampalone agreed to loan the $80,000 to Capital Collision, and she performed under the terms of the agreement by paying the funds to Capital Collision in two installments: $50,000 on or about March 24, 2005, and the remaining $30,000 on or about April 13, 2005. 2RR:58-9, 107-10, 158-59; PX-1; PX-2; PX-3A; Appx:2, ¶14. The loaned funds were deposited into Capital

Collision's bank account, a Bank of America Account held in the names of "Capital Collision" and "Eric Hinojosa." 2RR:107-10; PX-1; PX-2; PX-3A; Appx:2, ¶15. Dr. Pampalone had to take a second mortgage on her home in order to advance the $80,000 to the business. 2RR:57.

Although there was no signed promissory note for the loan, the terms of the loan were evidenced in yearly amortization schedules generated by Mr. Pampalone on Dr. Pampalone's behalf and sent to Mr. Hinojosa and the business. 2RR:59-60, 62; Appx:2, ¶16.

### D. The payments: 94 monthly payments over 8 years.

Beginning in May 2005, Capital Collision began performing under the agreement by making monthly payments to Dr. Pampalone in accordance with the agreed upon terms. 2RR:64-65, 112; Appx:2, ¶18. The parties stipulated that between May 2005 and April 2013, Dr. Pampalone received 94 monthly payments from two different Bank of America accounts as summarized in Plaintiff's Exhibit 3. CR:41-47; Appx:2, ¶19; Appx: 8; PX-3, PX-3A. From May 2005 through approximately March 2010, these payments were made from the Bank of America Account held in the names of "Eric Hinojosa" and "Capital Collision" (hereinafter, the "Capital Collision Account"). PX-3; PX-3A; Appx:2, ¶32; Appx: 8. Thereafter—and without missing a payment during the transition—payments were made from a Bank of America account held in the names of "Eric Hinojosa" and

7

"Capital Collision *GP*" (hereinafter, the "Capital Collision GP Account"). PX-3; PX-3A; Appx.2, ¶32. However, because the payments were being electronically deposited into Dr. Pampalone's account, she never noticed that there was any change in the bank account making the payments to her. 2RR:66, 79; Appx:2, ¶32.

Erik Pampalone began the process of leaving the business in 2006 and formally resigned in approximately April 2007. 2RR:113; Appx:2, ¶22. After resigning, Mr. Pampalone assisted Dr. Pampalone with oversight of repayment of the loan, which involved corresponding by telephone and email with his friend and former business partner, Mr. Hinojosa, and other Capital Collision employees concerning the loan, and the payments on the loan continued following his exit. 2RR:115; PX-3; PX-3A; PX-5; PX-6; PX-8; PX-9; PX-10; PX-14; PX-15; Appx.2, ¶22.

E.    **The fraud.**

With regular monthly payments hitting her bank account each month, as agreed, Dr. Pampalone never suspected that Eric Hinojosa, a man she had known since he was a child and someone she trusted, was actively defrauding her. 2RR:61, 79.

**1.   Eric Hinojosa wholly owned and controlled Capital Collision.**

Following Mr. Pampalone's resignation from Capital Collision, Mr. Hinojosa became and remained the sole officer/corporate director of the Hinojosa Auto Body & Paint, Inc. entities that comprised Capital Collision, GP d/b/a Capital Collision. 2RR:173; Appx:2, ¶23. Capital Collision became, according to Mr. Hinojosa's own testimony, "essentially just [him]." 2RR:173. And that company continued to repay the loan to Dr. Pampalone as agreed and exactly as it had been doing. 2RR:67, 113; PX-3; PX-3A; Appx:2, ¶23. But change was afoot.

**2.   Mr. Hinojosa formed a *new* company, also called Capital Collision, which he also wholly owned and controlled.**

In June 2009, Mr. Hinojosa formed a new company, one of the named defendants in the trial court: Austin Capital Collision, LLC. 2RR:173-74; PX-20; Appx:2, ¶24. The new company, like the old company, was also "basically just [him]." 2RR:174; Appx:2, ¶27. Mr. Hinojosa had a 99% ownership interest in Austin Capital Collision, LLC (his wife holding the other 1%), and he was the managing member. 2RR:173-74; Appx.2, ¶27. Austin Capital Collision, LLC, became the owner of the Capital Collision business and, like the first business had done, filed an assumed name certificate for "Capital Collision." Appx:2, ¶24, PX-21, PX-22.

### 3. After his new company took over the business of the old company, Mr. Hinojosa terminated the old company.

There was no asset purchase agreement between Eric Hinojosa's old company and his new company. 2RR:176. But his new company engaged in the same business as his old company, and his new company continued to use the same exact assumed name (2RR:174-75; PX-14), business email address (cptlcollision@aol.com) (2RR:217-18, 222-23; PX-5; PX-14), and email signature block (with the same name and physical address) (2RR:224; PX-14) as the old business. Appx:2, ¶29. Additionally, Austin Capital Collision, LLC, retained some of the same employees (2RR:219, 124-25, 223-24; Appx:2, ¶29), and took control of the Capital Collision Account and Capital Collision GP Account (Appx.2, ¶29). After Austin Capital Collision, LLC, was formed, the old company was left with nothing. 2RR:176:7-13. Thereafter, in July 2010, Mr. Hinojosa terminated the old company. 2RR:173; Appx.2, ¶26; PX-24.

### 4. Mr. Hinojosa did not tell Dr. Pampalone that he had terminated the company she had loaned money to.

Mr. Hinojosa did not tell Dr. Pampalone (or Erik Pampalone, who Mr. Hinojosa claimed was like a "brother" to him, 2RR:241) *any* of this—and he certainly did not provide her with any statutory notice that the company she had loaned money to had been terminated and that "Capital Collision" was now being operated as a brand new entity. 2RR:79, 127, 247. Instead, Mr. Hinojosa simply

10

continued to do business and repay Dr. Pampalone as Capital Collision, the only name Dr. Pampalone ever knew the business by. 2RR:55; Appx:2,¶31.

### 5. Mr. Hinojosa terminated the old company to "close old debt," but continued to send and receive correspondence related to the debt using the old company's address.

Why the secrecy? Because the old company was failing. It had "a ton of debt" that Mr. Hinojosa was eager to leave behind, so he terminated the old company and formed the new company to, in his own words, "close old debt, and whatever, from our previous company and relationships." 2RR:175-76, 232-34. Mr. Hinojosa testified that he took steps to wind up the old company, including paying *some* debts—but *not* the debt to Dr. Pampalone. 2RR:236.

Instead, Mr. Hinojosa, in his capacity as the managing member of Austin Capital Collision, LLC, continued to direct that payments be made to Dr. Pampalone on the loan. 2RR:240-41; Appx:2, ¶31. Employees and representatives of Austin Capital Collision, LLC, communicated with Dr. Pampalone and Erik Pampalone on Austin Capital Collision, LLC's, behalf, acknowledging the existence of the loan and Austin Capital Collision, LLC's, indebtedness thereunder. Appx:2, ¶¶34-36. Erik Pampalone, acting on his mother's behalf, sent correspondence concerning the loan to the cptlcollision@aol.com email address and, in response, Austin Capital Collision, LLC, continued to make payments on the loan. 2RR:127; Appx:2, ¶34; PX-12a,

11

PX-13, PX-14. Indeed, in September 2012 (years after the old company had been terminated), when Mr. Pampalone sent an email to the cptlcollision@aol.com address requesting that Mr. Hinojosa change where he was sending the monthly payments on the loan, Mirium Matta—Mr. Hinojosa's sister-in-law and an employee of Austin Capital Collision, LLC—responded from the cptlcollision@aol.com email address with "received and updated." 2RR:123-24; PX-14; Appx:2, ¶35. And the payments continued. PX-3; PX-3A.

**6. Unbeknownst to Dr. Pampalone, Mr. Hinojosa transferred payments on the loan to an account held in the name of the old company that he had terminated and funded that account with money from the new company and his own personal funds.**

In March 2010, just a few months before terminating Capital Collision, GP, Mr. Hinojosa switched the monthly payments on the loan to the Capital Collision GP Account. 2RR:196-98; PX-3; PX-3A; Appx: 9. Around this same time, he also began transferring funds from the Capital Collision Account into the Capital Collision GP Account to cover the payments coming out of that account. 2RR:193-98; PX-3A; Appx:2, ¶32; Appx: 9. Mr. Hinojosa testified that he also put his own *personal* funds into the Capital Collision GP account to cover the payments being made from that account to Dr. Pampalone. 2RR:248-49; Appx:2, ¶33. Of note, the payments from both accounts were overwhelmingly described on the bank statements as "Barbara Pampalone Bill Payment." PX-3A.

12

**7. Three years after terminating the company to which Dr. Pampalone had made the loan, Mr. Hinojosa stopped paying.**

Indeed, in early 2013, paying the loan to Dr. Pampalone was just about the only thing that the Capital Collision GP account was doing. 2RR:209-12; PX-3A; Appx. 10. In short, Mr. Hinojosa arranged for payments on the loan to be transferred from a bank account held in the name of a company that was still in existence ("Capital Collision" now belonging to Austin Capital Collision, LLC) to a bank account held in the name of company that was defunct (Capital Collision GP) and had no assets. Appx. 9. And when he stopped paying on the loan—three years later—the period of limited survival for the old company had expired. 2RR:212-13:18; PX-3; PX-3A; Appx:2, ¶¶37-38; Appx. 10.

**F. The litigation.**

When the payments ceased, Dr. Pampalone—still unaware that the company she had made the loan to had been terminated—made demand for payment, but Eric Hinojosa failed and refused to cure the default. Appx.2, ¶39. The lawsuit in the trial court ensued in which Dr. Pampalone sued both Austin Capital Collision, LLC, and Eric Hinojosa for breach of contract. CR:28-40. The case was tried to the bench on June 8, 2015. The parties stipulated at the trial that the amount due and owing on the loan as of the date of trial was $56,758.68. CR:41-47; Appx.2, ¶41.

The trial court found in favor of Dr. Pampalone and rendered judgment against Austin Capital Collision, LLC, for breach of the loan agreement. 2RR:252-53; Appx:1. The trial court did not find Eric Hinojosa individually liable for breach of contract based on piercing the corporate veil. 2RR:253. However, the trial court specifically found that Mr. Hinojosa lacked credibility, especially in light of the fact that he was wholly unprepared for his corporate representative deposition, having not reviewed a single document or talked to any employees or representatives regarding the designated topics, and that he demonstrated a repeated inability to provide substantive responses on his own behalf or on behalf of Austin Capital Collision, LLC. 2RR:252; Appx:2, ¶48. Further, the trial court found that, at trial, Mr. Hinojosa tried to change many of the answers he had provided at his deposition just one month prior. Appx:2, ¶48.

## SUMMARY OF THE ARGUMENT

Eric Hinojosa, Defendant and Cross-Appellee, had a company (Capital Collision GP) doing business as "Capital Collision." In 2009, he wholly owned and controlled that company, and business was not good. The company had, by Mr. Hinojosa's own admission, a "ton of debt," including an $80,000/20year loan it owed to Dr. Barbara Pampalone. Mr. Hinojosa saw a clear way out: he formed a new company (Austin Capital Collision, LLC), and this company essentially took over the old company—it used the same assumed name ("Capital Collision"), the

14

same email address, had some of the same employees, and used the same bank accounts. Most importantly, the new company was also exclusively controlled by Mr. Hinojosa. In sum, he formed the new company as a way to shake the old company's debt.

Among the debt he sought to avoid was that of Dr. Pampalone. In a carefully orchestrated charade, Mr. Hinojosa tried to get rid of the debt to Dr. Pampalone by changing the source of the monthly payments on the loan to a bank account held specifically in the name of the old company ("Capital Collision GP"), terminating that old company, failing to provide Dr. Pampalone with notice of that termination, and then secretly funding that old company's account and quietly continuing to make payments to Dr. Pampalone from that account until the statutory period for suing a terminated entity expired, leaving her with— presumably—no one to sue.

But Eric Hinojosa's efforts were too little, too late. Not only did his new company, Austin Capital Collision, LLC, assume the loan to Dr. Pampalone (as the trial court correctly found and concluded), but, as a matter of law, Eric Hinojosa is liable on the loan in his individual capacity, too: the trial court's findings of fact and the undisputed evidence establish that, as the managing member and 99% owner of Austin Capital Collision, LLC, the separation between both companies

and Eric Hinojosa had ceased to exist, and Mr. Hinojosa further caused each company to be used to perpetrate a fraud against Dr. Pampalone.

In satisfaction of this last point, the findings of fact and undisputed facts show that Eric Hinojosa used the corporate form to intentionally defraud Dr. Pampalone. He lulled her into a sense of normalcy as she received regular monthly payments from "Capital Collision" for years, and without any clue that the company for which she had mortgaged her house in order to make an $80,000 loan had been terminated, and a brand new company had taken over. This is exactly the type of controlling, misleading behavior that the alter ego theory is intended to prevent.

And moreover, even if this Court concludes that Eric Hinojosa's deceit was not intentional, such a conclusion is not fatal to a piercing claim. Rather, intentionality is not needed for the limited purposes of showing "actual fraud" under the alter ego theory where the elements of the Texas fraudulent transfer statute are also satisfied. Here, the findings of fact and undisputed facts indeed satisfy the elements of a fraudulent transfer, as they show, more simply, that (a) Eric Hinojosa's new company took control of the assets of the old company, and (b) (by Mr. Hinojosa's own admission), the old company was insolvent at the time of its termination.

# ARGUMENT

## A. *De Novo* Standard of Review

Under Texas law, factual disputes related to the bases for *alter ego* liability are questions of fact for the factfinder. *Phillips v. Carlton Energy Group, LLC*, No. 12-0255, 2015 WL 2148951, at *15 (Tex. May 8, 2015). However, as the Texas Supreme Court has recently made clear, once the factfinder has resolved those disputes, or when the facts are not disputed, the imposition of *alter ego* liability becomes a matter of law for the court. *Id.*[1]

Where, as here, the trial court's factual findings are adequately supported, an appellate court should accept those factual findings as true, but review the trial court's application of the law to those findings *de novo*. *Remington Arms Co., Inc. v. Luna*, 966 S.W.2d 641, 643 (Tex. App.—San Antonio 1998, pet. denied). By contrast, in those few places where the trial court made no findings of fact, this Court should look to the undisputed evidence presented at trial. *Phillips*, 2015 WL 2148951, at *15.

## B. The trial court judgment should be reformed to impose liability on Eric Hinojosa because the trial court erred in failing to impose *alter ego* liability based on its factual findings and the undisputed evidence.

---

[1] Applying this standard in *Phillips*, the Texas Supreme Court both affirmed a jury verdict finding *alter ego* liability, and explicitly declared that such liability was established by the evidence as a matter of law. *Phillips*, 2015 WL 2148951.

17

Here, this Court should defer to the findings of fact that the trial court did make, which explicitly support the conclusions of law made by the trial court and additionally support disregarding the corporate fiction and holding Eric Hinojosa liable individually on the breach of contract claim. *Phillips*, 2015 WL 2148951, at *15. And to the extent that the trial court made no finding of fact, this Court should look to the undisputed evidence in the trial record. *Id.*

Courts will pierce the corporate veil and hold an individual shareholder personally liable for the acts of a corporation where the evidence shows that a corporation is organized and operated as a mere tool or business conduit of the shareholder. *Castleberry v. Branscrum*, 721 S.W.2d 270, 271 (Tex. 1986), *superseded by statute on other grounds*. The touchstone of a successful alter ego claim is a "blurring of identities, or a blurring of lines of distinction, both formal and substantive, between two corporations or between an individual and a corporation." Hideca Petroleum Corp. v. Tampimex Oil Intern., Ltd. 740 S.W.2d 838, 843 (Te*x. A*pp.—Houston [1st Dist.] 1987, no writ). In other words, a finding of "alter ego" is justified when "there is such a unity between the corporation and individual . . . that the separateness between the two has ceased, and holding only the corporation or just one of the corporations liable would result in injustice." *Id.* Importantly, an alter ego relationship may be shown from the *total* dealings of the

18

corporation and the individual. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990).

Since *Castleberry*, three elements requisite for setting aside the corporate form and holding an individual liable on the basis of the alter ego doctrine have emerged: (1) The defendant must have some financial interest, ownership, or control of the corporation, *Stewart & Stevenson Services, Inc. v. Serv-Ttech, Inc.*, 879 S.W.2d 89 (Tex. App.—Houston [14th Dist.] 1994, pet denied); (2) There must be such a unity between the corporation and the individual that the separateness of the single corporation has ceased, *see* Tex. PJC 108.2; *Mancorp*, 802 S.W.2d at 228; and (3) It would result in an injustice to hold only the corporation liable, *id.*[2]

Furthermore, where the underlying cause of action for which the plaintiff seeks to hold the defendant liable is based on or relates to a contract, the plaintiff must show that the defendant: (4) Caused the corporation to be used for the purpose of perpetrating an actual fraud; and (5) Perpetrated an actual fraud on the plaintiff primarily for the defendant's direct personal benefit. TEX. BUS. ORG. CODE § 21.223(b)[3]; Tex. PJC 108.2. However, in this limited context, there are

---

[2] *See also* O'Connor's Texas Causes of Action, Chapter 38-F, Principal-Agent Liability, Piercing the Corporate Veil, § 2 (2015) (outlining the three elements of an alter ego claim).

[3] Section 21.223(b) of the Texas Business Organizations code provides that liability of "any affiliate of the corporation" will be limited with respect to "any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the . . . affiliate is or was the alter ego of the corporation," unless the plaintiff demonstrates that the

19

multiple ways in which a plaintiff can show "actual fraud," and a plaintiff need not *necessarily* prove that the defendant had an actual *intent* to defraud the plaintiff. But rather, where the plaintiff can merely show that the elements of the Texas fraudulent transfer statute are satisfied (none of which call for a particular mental state), the actual fraud requirement of an alter ego claim is likewise satisfied. *Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389, 393 (Tex. App.—Amarillo 2000, no pet.).

### 1. The trial court correctly found that Eric Hinojosa completely owned and controlled both companies during the relevant time periods.

The findings of fact explicitly note that "[a]t the time of termination of the HABP [Hinojosa Auto Body & Paint, Inc.] Entities and the formation of Austin Capital Collision, LLC, all entities were operated solely by Defendant Eric Hinojosa." Appx:2, ¶29. And even Mr. Hinojosa himself expressly admitted his exclusive control of the old company:

> Q: And at the time the [old] company was terminated, you were the sole shareholder, right?
> A: Correct.
> Q: And you're also the sole officer and director?
> A: Correct.
> . . . .
> Q: So *the company was essentially just you*?
> A: *Correct*.

"affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the oblige primarily for the direct personal benefit of the . . . affiliate."). *See also Farr v. Sun World Savings Ass'n*, 810 S.W.2d 294, 296 (Tex. App.—El Paso), no writ).

2RR:173 (emphasis added).

Mr. Hinojosa further testified as to his exclusive control of the new company, Austin Capital Collision, LLC:

> Q: Now, Austin Capital Collision, LLC was formed in June of 2009; is that correct?
> . . . .
> A: Yes.
> Q: And you're the managing member of that company?
> A: Yes.
> Q: You have a 99 percent ownership?
> A: Correct.
> Q: And your wife has 1 percent?
> A: Correct.
> Q: ***So the company is, basically, you?***
> A: ***Correct.***

2RR:173-74 (emphasis added).

Moreover, the trial court found that Mr. Hinojosa's new company, Austin Capital Collision, LLC, took control over the bank accounts of his old company, Capital Collision GP. Appx:2, ¶29. Additionally, the trial court made the factual finding that Mr. Hinojosa intentionally put money into one of the bank accounts owned and controlled by Austin Capital Collision (the account held in the names of "Eric Hinojosa" and "Capital Collision, GP") to pay Dr. Pampalone on the loan made to the old company. Appx:2, ¶33. These findings of fact and the undisputed evidence supporting these findings establish, as a matter of law, that Mr. Hinojosa had some "financial interest, ownership, or control of the corporation." *See*

21

*Schlueter v. Carey*, 112 S.W.3d 164, 170 (Tex. App.—Fort Worth 2003, pet. denied). In *Schlueter*, the Court held that the defendant exercised "control" over a corporation where the defendant owned all of the stock in the corporation, was one of its only two officers, and had personally signed a lease on behalf of the corporation that was now being sued for premises liability. *Id.*

Applying a similar threshold for "control," Mr. Hinojosa clearly controlled both the old and new companies. Appx:2, ¶27. He was the *only* shareholder, officer, and director of the old company, and he was the majority owner and managing member of the new company. 2RR:173-74. Furthermore, as the managing member of Austin Capital Collision, LLC, he controlled all of the loan payments being made to Dr. Pampalone. These facts are very similar to those warranting a finding in *Schlueter* that the defendant "controlled" the corporation for the purposes of piercing the veil and reaching the defendant's personal assets.[4]

### 2. The trial court correctly found that Eric Hinojosa commingled personal and corporate assets and obligations.

Courts look to a number of factors in deciding whether there exists such a unity between a defendant and the corporation that the separateness of the two has

---

[4] Other courts examining similar facts have more recently reached the same conclusion. For instance, in *MBR & Associates, Inc. v. Lile*, 02-11-00431-CV, 2012 WL 4661665, (Tex. App.— Fort Worth Oct. 4, 2012, pet. denied), the court of appeals found that the following factors supported an alter ego finding: that the defendant's individual property was not kept separate from the corporation's, that the corporation was used for the personal purpose of holding the defendant's home, and that "*the defendant was the sole shareholder and owner of* the corporation." *Id.*, at *6.

ceased: (1) whether there is a commingling of corporate and personal funds, *Mancorp*, 802 S.W.2d at 228; (2) the amount of control the individual maintains over the corporation, *id.*; (3) whether the corporation has been used for individual purposes, *id.*. Furthermore, evidence serving as proof of alter ego can include: (1) "payment of alleged corporate debts with personal checks or other commingling of funds," *Dodd v. Savino*, 426 S.W.3d 275, 291 (Tex. App.—Houston [14 Dist.] 2014, no pet.); (2) "representations that the individual will financially back the corporation," *id.*; (3) "diversion of company profits to the individual for the individual's personal use," *id.*; (4) "inadequate capitalization," *id.*; and (5) "any other failure to keep corporate and personal assets separate," *id.* No single factor or combination of factors is necessarily dispositive and the list is not exclusive. *Dodd*, 426 S.W.3d at 291 (indicating that alter ego is shown from the *total* dealings of the corporation, and these are some factors included among those factors that courts examine in determining whether to pierce the corporate veil).

Additionally, the *Schlueter* court found the fact that the individual defendant often referred "to himself and [the corporation] interchangeably" to be persuasive evidence, along with other evidence, that "there was a unity between them that the separateness of [the corporation] had ceased and [the defendant] operated the corporation as a mere business tool or conduit for himself." 112 S.W.3d 164, 170 (Tex. App.—Fort Worth 2003, pet. denied).

The courts' prior rulings in at least two cases should persuade this Court to, as a matter of law, pierce the veil and hold Mr. Hinojosa individually liable. In *Mancorp v. Culpepper*, a seminal Texas Supreme Court case on alter ego liability, the Court affirmed a jury finding of alter ego liability on a breach of contract claim where the following evidence was presented to the jury: (a) checks showing payment of corporate debts with the individual defendant's personal funds; (b) the individual's business card, which bore words that might show he considered himself to be indistinguishable from the corporation (specifically, the card read "Culpepper Properties, Inc., John C. Culpepper, Jr., his self"); and (c) evidence that he had personally guaranteed the loan in question and had behaved in such a way that showed he personally backed the loan made. 802 S.W.2d at 228.

In *Cappuccitti v. Gulf Industrial Products, Inc*, a case very similar to the one at hand, Cappuccitti, the individual defendant and president of the corporation, Minerec, had signed an agreement with the plaintiff in his capacity as president. 222 S.W.3d 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.). At some point during his time as president of Minerec, the defendant paid at least one debt of Minerec's with a personal check. *Id.* at 475. He then later transferred ownership of Minerec's assets to a company called Flottec, leaving the first company insolvent and unable to pay its debt on the agreement to the plaintiff. *Id.* at 476. He was the sole owner of the new company, Flottec, which was a 90% owner of

the old company, Minerec. *Id.* at 482. The court found that this, in addition to the fact that Cappuccitti had originally backed Minerec with a personal line of credit, sufficient for finding that the old company, new company, and individual defendant were so intertwined that piercing the corporate veil was justified. *Cappuccitti*, 222 S.W.3d 468.

Similarly, in the instant case, the findings of fact and undisputed evidence show that Mr. Hinojosa commingled corporate and personal funds (2RR:248-49), held two bank accounts in both his name and the company name (one in the name of "Eric Hinojosa" and "Capital Collision," and a second in the name of "Eric Hinojosa" and "Capital Collision GP") (Appx:2, ¶33), paid alleged corporate debts with personal funds (*id.*; 2RR:248-49), completely controlled both companies (Appx:2, ¶29), and admitted at trial that both companies were just him (2RR:173-74). These facts are more than sufficient to pierce the corporate veil as a matter of law.

### 3. Limiting liability would work an injustice because it is undisputed that Eric Hinojosa emptied the original debtor to make a new company without telling anyone.

"Where a corporate entity is owned or controlled by an individual who operates the company in a manner indistinguishable from his personal affairs and in a manner calculated to mislead those dealing with him to their detriment, the corporate fiction may be disregarded in order to prevent injustice." *Mancorp*, 802

S.W.2d at 229 (internal quotation omitted). But as the Texas Supreme Court has explained, "injustice" does not require "a subjective perception of unfairness by an individual judge or juror"; rather, it is merely a "shorthand reference[] for the kinds of abuse . . . that the corporate structure should not shield—fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like." *SSP Partners v. Gladstrong Investments (USA) Corporation*, 275 S.W.3d 444, 454-55 (Tex. 2008).

In the instant case, Mr. Hinojosa's penchant for deceit and dishonesty was readily apparent to the trial court, which noted that Mr. Hinojosa lacked credibility, especially in light of his attempt to change so many of his answers at trial. Appx:2, ¶48. And the trial court's findings of fact and the undisputed evidence establish that Mr. Hinojosa laid behind the log, maintaining regular payments to Dr. Pampalone while silently terminating the company she had loaned the money to in an effort to wipe away that company's debts. Appx:2, ¶ 22-39; 2RR:175-6. Mr. Hinojosa continued payments to Dr. Pampalone for the three-year statutory period for winding up, made one final, lump sum payment, and then—with the old company Dr. Pampalone had originally loaned the money to officially off the books—disavowed the debt. Appx:2, ¶26, 33,38; 2RR:239-42; TEX. BUS. ORG. § 11.356. Because these actions were undertaken by Mr. Hinojosa, it would be unjust to hold *only* Austin Capital Collision, LLC, which assumed the debt, liable.

Mr. Hinojosa's actions and conduct misled Dr. Pampalone as to the status of the first company and her rights as a creditor. 2RR:78-79. And even the trial court explicitly noted in its findings of facts that Barbara Pampalone had no reason to suspect that the old company had been terminated and a new company had been formed. Appx:2, ¶30. Further, it is undisputed that Dr. Pampalone cannot be paid back by the old company, as that company no longer exists. As a matter of law, these undisputed facts warrant piercing the corporate veil in order to prevent injustice on Dr. Pampalone. *Mancorp*, 802 S.W.2d at 229; *SSP Partners*, 275 S.W.3d at 454-55.

**4. The requirement of fraud is established by the trial court's findings and the undisputed evidence at trial because the findings and undisputed evidence established as a matter of law (a) a fraudulent transfer under Tex. Bus. & Com. Code § 24.006(a), and (b) that Eric Hinojosa intentionally used the companies to deceive his creditor for his personal benefit.**

Section 21.223 of the Texas Business Organizations Code requires that before the corporate form can be disregarded in a breach of contract action, a plaintiff must establish the defendant used the corporate form to perpetrate actual fraud for his or her own benefit. TEX. BUS. ORGS. CODE § 21.223(b). A defendant commits actual fraud when the defendant, among other things, either (a) makes a fraudulent transfer under Section 24.006 of the Texas Business and Commerce

Code, *Harco Energy, Inc.* 23 S.W.3d at 393;[5] or (b) commits actual fraud as defined by the Supreme Court in *Castleberry*, *Farr*, 810 S.W.2d at 297-98.

> ***a.***     ***Eric Hinojosa effected a fraudulent transfer under Section 24.006 of the Texas Business and Commerce Code***

Section 24.006(a) provides:

> A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . .

TEX. BUS. & COM. CODE § 24.006(a).

Here, the trial court judge found, and the undisputed evidence established, that Eric Hinojosa transferred all of the assets of his old company to the new company without any consideration or asset purchase agreement (and, tellingly, without informing the creditors of his old company). The transfer of assets left the old company insolvent, to the extent it was not already. Indeed, as Mr. Hinojosa himself explained it:

> Q: You don't have an asset purchase agreement, do you, between Austin Capital Collision, LLC, and Hinojosa Auto Body & Paint, Inc. Texas or Nevada?
> A: There were no assets.

---

[5] *See also* O'Connor's Texas Causes of Action, Chapter 38-F, Principal-Agent Liability-Piercing the Corporate Veil, § 2 (2015).

28

Q: And there's—so there's no asset purchase agreement at all, is there?
A: There were no assets, no.

2RR:176.

Similarly, the trial court found that Mr. Hinojosa's new company took control of the assets of his old company—including the bank accounts, name, goodwill, and general business—"although there was no formal purchase or transfer of assets between Austin Capital Collision, LLC, and the HABP Entities." Appx:2, ¶29.

By his own admission, the old company was insolvent at the time Mr. Hinojosa left. 2RR:176. Moreover, the trial court found that he in fact took over not only the bank accounts of the old company, but essentially the goodwill of the old company, as it assumed the same business name (Capital Collision), the same email address, retained some of the same employees, and "operated the same general business." 2RR:57; Appx:2, ¶57. Accordingly, the trial court's finding of facts coupled with the undisputed evidence show that Mr. Hinojosa effected a fraudulent transfer of the assets of the old company, as he (a) (according to the trial judge's findings), took control of those assets to use for the new company, and (b) (by his own admission), apparently left the old company with no assets. And as if this was not enough and although certainly not a necessary fact on this point even Mr. Hinojosa himself stated during his deposition (introduced at trial) that there

was only one reason to create the new company: "to close" his "old debt." 2RR:176.

### b. Eric Hinojosa used the companies to deceive his creditor for his personal benefit

Additionally, the findings of fact and undisputed evidence are sufficient, as a matter of law, to set aside the corporate fiction on the grounds that Mr. Hinojosa committed *actual* fraud. For purposes of piercing, actual fraud "involves dishonesty of purpose or intent to deceive."[6] *Castleberry*, 721 S.W.2d at 273. Furthermore, it does not require findings on the traditional common law elements of fraud by misrepresentation or omission. *Dick's Last Resort of West End, Inc. v. Market/Ross, Ltd.*, 273 S.W.3d 905, 908-10 (Tex. App.—Dallas 2008, pet. denied). Fraudulent intent may be deduced from all of the facts and circumstances. *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013).

The findings of fact coupled with the undisputed facts show, as a matter of law, that Eric Hinojosa was dishonest regarding his purpose and personal intentions for the companies' uses, that he intended to deceive Dr. Pampalone, and

---

[6] While "intent to deceive" is not clearly defined anywhere, in *Farr v. Sun World Savings Association*, the El Paso Court of Appeals found that the following facts gave rise to "an intent to deceive": (1) the defendant, a mortgage company, had been transacting with a third party, Fannie Mae, despite not conforming to government regulations for engaging in such transactions; (2) the mortgage company was in bad standing with two other banks in town; (3) the individual defendant operating the mortgage company did not follow Texas laws governing the accounting and holding of funds received from plaintiff; (4) proceeds that the mortgage company received were used to pay other obligations, including some of the individual defendant's personal obligations, as opposed to plaintiff; and (5) the individual defendant was "running behind," so it knew when it took plaintiff's money that it would not be repaying plaintiff. 810 S.W.2d 294, 297 (Tex. App.—El Paso 1991, no writ).

that he did so for his personal gain. Mr. Hinojosa himself admitted that he exercised complete control over both companies, and that the old company did not have the money to repay Dr. Pampalone. 2RR:173-74, 176. But money was owed to Dr. Pampalone, so Eric Hinojosa personally made deposits into a bank account held in the old company's name, and from that account made monthly payments to Dr. Pampalone for up to three years following the dissolution of the old company. Appx:2, ¶26, 33,38; 2RR:239-42. Three years, of course, is the length of time that a domestic filing entity survives for the limited purposes of suing and being sued following termination. TEX. BUS. ORG. § 11.356. By continuing payments on the loan from a bank account that belonged to a defunct entity for three years following that entity's termination, Mr. Hinojosa was clearly hoping to nullify the debt. Tellingly, however, Mr. Hinojosa never gave notice to Dr. Pampalone that he was winding down his old company. TEX. BUS. ORG. § 11.052 (requiring written notice of winding up by the corporate general partners). Furthermore, he continued to receive her loan statements at the same email address he had always used, even once responding to one of her inquiries from that same email address. 2RR:125-27, 223-25. Accordingly, as the trial court found, Dr. Pampalone had no reason to suspect anything was awry. Appx:2, ¶30. In the meantime, Hinojosa's new company took control of the old company's accounts, business operations, goodwill, and employees, and continued to operate without a hitch. Appx:2, ¶29.

31

Exactly three years after he "terminated" the old company, exactly when the statutory wind-down and look-back period was up, Eric Hinojosa ceased all payments to Ms. Pampalone. *See, e.g.*, *Farr v. Sun World*, 810 S.W.2d 294, 297 (Tex. App.—El Paso 1991, no writ) (finding that where an individual defendant knew or should have known ahead of time that he would not be paying a plaintiff because the company was behind on its payments, this supported finding that the defendant had an "intent to deceive" the plaintiff when it took plaintiff's money).

As 99% shareholder, Eric Pampalone personally profited from his scheme, as he essentially, and intentionally, effected his own bankruptcy completely outside of the court system, and in the process scraped off at least one major creditor (if not more), Barbara Pampalone.

## C. The proper remedy is to reform and render the judgment.

Because the issue before the court is a question of law, rather than a question of fact, this Court should reform and render the judgment to pierce the corporate veil and hold Eric Hinojosa liable, rather than remand the question to the trial court. Generally, on finding that the trial court's judgment should be reversed, the court of appeals must render the judgment the lower court should have rendered, except where remanding to the lower court for further proceedings is necessary. Tex. R. App. P. 43.3; *see also* 6 McDonald & Carlson Tex. Civ. Prac. App. Prac. § 33:10 (2d ed.). Here, there is nothing that must by necessity be determined by the

32

trial court, as it has made the factual findings sufficient for this Court to render a judgment against Eric Hinojosa individually.

## CONCLUSION

For the above reasons, applying the alter ego doctrine, this Court should as a matter of law pierce the corporate veil and hold Eric Hinojosa personally liable for the debt owed on the loan made by Ms. Pampalone to Capital Collision. The factual findings and undisputed facts show that Hinojosa controlled both companies, that the separation between the companies and Hinojosa had long-ceased to exist, that it would be unjust to hold only Austin Capital Collision liable for the debt owed to Ms. Pampalone, that Eric Hinojosa never intended to pay Ms. Pampalone the full amount of loan at the time he formed Austin Capital Collision, and that Eric Hinojosa effected a fraudulent transfer of assets, leaving the old company unable to pay off its obligations.

## PRAYER

For the foregoing reasons, Cross-Appellant Barbara Pampalone respectfully requests that this Court reform and render judgment against Cross-Appellee Eric Hinojosa individually. Cross-Appellant Barbara Pampalone further requests this Court grant it such other and further relief to which it may be entitled in law or in equity.

Respectfully submitted,

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Nelia J. Robbi
State Bar No. 24052296
Joe Lea
State Bar No. 24013257
Stephanie N. Duff-O'Bryan
State Bar No. 24087448
600 Congress Avenue, Suite 2100
Austin, Texas  78701
(512) 495-6000
(512) 495-6093 FAX
nrobbi@mcginnislaw.com


 /s/ Nelia J. Robbi
Nelia J. Robbi
State Bar No. 24052296

ATTORNEYS FOR BARBARA
PAMPALONE

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of November, 2015, I electronically filed the foregoing Brief of Cross-Appellant Barbara Pampalone, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael Truesdale
mike@truesdalelaw.com
801 West Avenue, Suite 201
Austin, Texas  78701
(512) 482-8671
(866)-847-8719 FAX

Adam Pugh
apugh@slaterpugh.com
8400 N. Mopac Expressway, Suite 100
Austin, Texas  78759
(512) 472-2431
(512) 472-0432 FAX

***Attorneys for Eric Hinojosa***

/s/ Nelia J. Robbi
Nelia J. Robbi
Joe Lea
Stephanie N. Duff-O'Bryan

***Attorneys for Barbara Pampalone***

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing Cross-Appellant's Brief was prepared with Microsoft Word 2007, and that, according to that program's word-count function, the sections covered by TEX. R. APP. P. 9.4(i)(1) contains 7,417 words. I further certify that this brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e).

/s/ Nelia J. Robbi
Nelia J. Robbi
Joe Lea
Stephanie N. Duff O-Bryan

***Attorneys for Barbara Pampalone***

Date: November 18, 2015

## APPENDIX

1.  Final Judgment

2.  Findings of Fact and Conclusions of Law

3.  TEX. BUS ORG. CODE § 11.052

4.  TEX. BUS. ORG. CODE § 11.356

5.  TEX. BUS. ORG. CODE § 21.223

6.  TEX. BUS. & COMM. CODE § 24.006

7.  TEX. R. APP. P. 43.3

8.  Plaintiff's Exhibit 3 (summary of payments)

9.  Excerpts of Plaintiff's Exhibit 3A (transfers)

10. Excerpts of Plaintiff's Exhibit 3A (end of payments)

11. Stipulation of the Parties

# APPENDIX

1

Filed in The District Court
of Travis County, Texas

**JUN 1 8 2015**

At ___2:46___ PM.
Velva L. Price, District Clerk

NO. D-1-GN-14-003207

| | | |
|---|---|---|
| BARBARA PAMPALONE, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ERIC HINOJOSA AND AUSTIN | § | |
| CAPITAL COLLISION, LLC, | § | |
| | § | |
| *Defendants.* | § | 419TH JUDICIAL DISTRICT |

## FINAL JUDGMENT

On June 8, 2015, this case was called for trial. Plaintiff Barbara Pampalone appeared in person and announced ready for trial. Defendant Eric Hinojosa appeared in person and announced ready for trial. Defendant Austin Capital Collision, LLC, appeared through its representative, Eric Hinojosa, and announced ready for trial.

All matters in controversy, legal and factual, were submitted to the Court for its determination. The Court heard the evidence and arguments of counsel and announced its decision for Plaintiff Barbara Pampalone.

The Court orally RENDERED judgment for Plaintiff Barbara Pampalone and against Defendant Austin Capital Collision, LLC, on June 8, 2015, and this written judgment memorializes that rendition.

IT IS THEREFORE ORDERED that Plaintiff recover the following from Defendant Austin Capital Collision, LLC:

1. Actual damages in the amount of $56,758.68;

2. Plus reasonable and necessary attorneys' fees in the amount of $43,241.32; plus

3. Post-judgment interest at the rate of 5.0%, compounded annually from the date this judgment is entered until all amounts are paid in full.



004080302



50

It is further ORDERED that Defendants take nothing.

It is further ORDERED that if Defendant Austin Capital Collision, LLC, unsuccessfully appeals this judgment to an intermediate court of appeals, Plaintiff Barbara Pampalone will additionally recover from Defendant Austin Capital Collision, LLC, the amount of $20,000.00, representing the anticipated reasonable and necessary fees and expenses that would be incurred by Plaintiff in defending the appeal.

It is further ORDERED that if Defendant Austin Capital Collision, LLC, unsuccessfully appeals this judgment to the Texas Supreme Court, Plaintiff Barbara Pampalone will additionally recover from Defendant Austin Capital Collision, LLC, the amount of $20,000.00, representing the anticipated reasonable and necessary fees and expenses that would be incurred by Plaintiff in defending the appeal.

It is further ORDERED that Plaintiff may have all writs, orders and executions necessary for collection of this judgment, which may issue immediately.

It is further ORDERED that except as specifically provided herein, all relief not expressly granted is hereby DENIED.

This judgment finally disposes of all parties and all claims and is appealable.

SIGNED this __18__ day of June, 2015.

_____
THE HONORABLE TODD WONG

2

APPROVED AS TO FORM AND SUBSTANCE:

McGINNIS LOCHRIDGE
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6065
(512) 495-6093 (Fax)

By:_____
        Joe Lea
        State Bar No. 12082000
        jlea@mcginnislaw.com
        Nelia J. Robbi
        State Bar No. 24052296
        nrobbi@mcginnislaw.com
        Jordan K. Mullins
        State Bar No. 24070308
        jmullins@mcginnislaw.com

ATTORNEYS FOR BARBARA PAMPALONE


APPROVED AS TO FORM ONLY:

SLATER PUGH, Ltd. LLP
8400 N. Mopac Expressway
Suite 100
Austin, Texas 78759
Telephone: (512) 472-2431
Telecopier: (512) 472-0432

By:_____
        Adam Pugh
        State Bar No. 24044341
        apugh@slaterpugh.com

3

2

NO. D-1-GN-14-003207

| | | |
|---|---|---|
| BARBARA PAMPALONE, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ERIC HINOJOSA AND AUSTIN | § | |
| CAPITAL COLLISION, LLC, | § | |
| | § | |
| *Defendants.* | § | 419TH JUDICIAL DISTRICT |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. Introduction

On June 8, 2015, this case was called for trial, and all matters in controversy, legal and factual, were submitted to the Court for its determination. In addition to all other findings necessary to support the Judgment rendered in favor of Plaintiff and against Defendant Austin Capital Collision, LLC, in this cause, the Court hereby makes and files the following specific findings of fact and conclusions of law. Any finding of fact that should be construed as conclusion of law is hereby adopted as such. Any conclusion of law that should be construed as a finding of fact is hereby adopted as such.

### II. Findings of Fact

*A. Procedural History.*

1. Plaintiff Barbara Pampalone ("Plaintiff") filed her original petition on August 26, 2014, alleging causes of action for breach of contract against Defendant Eric Hinojosa and Defendant Austin Capital Collision, LLC.

2. This is an expedited action under Texas Rule of Civil Procedure 169.

3. This case was called for bench trial on June 8, 2015, and the parties appeared and announced ready for trial. At the close of trial, judgment was rendered in favor of Plaintiff and



004108045



against Defendant Austin Capital Collision, LLC. Judgment was signed on June 18, 2015.

4. Defendants requested findings of fact and conclusions of law on June 18, 2015.

**B. The Parties and Associated Persons/Entities.**

5. Defendant Eric Hinojosa is a resident of Texas. Eric Hinojosa previously lived in California where he and Plaintiff's son, Erik Pampalone, became friends.

6. Plaintiff is a semi-retired dentist who resides in Chatsworth, California.

7. In 2005, when the loan at issue in this lawsuit was made, Eric Hinojosa was the president and a 50% shareholder of Hinojosa Auto Body & Paint, Inc. (Texas), and Hinojosa Auto Body & Paint, Inc. (Nevada), (collectively, the "HABP Entities"). Plaintiff's son, Erik Pampalone, was the vice president and other 50% shareholder of the HABP Entities. The HABP Entities were the general partners of Capital Collision, G.P., and the business—auto body repair shop—operated under the assumed name filed by Eric Hinojosa of Capital Collision [Exh. P-19]. The HABP Entities were terminated in July of 2010 and, accordingly, the general partnership of Capital Collision, G.P. was also terminated.

8. Prior to the termination of the HABP Entities in 2010, Eric Hinojosa formed Defendant Austin Capital Collision, LLC, in June of 2009. Eric Hinojosa is the sole managing member and 99% owner of Austin Capital Collision, LLC, which is also engaged in auto body repair. On the same day that Austin Capital Collision, LLC, was formed, Defendant Eric Hinojosa filed an assumed name certificate on behalf of Austin Capital Collision, LLC, for the name "Capital Collision." Austin Capital Collision, LLC, continues to conduct business today as Capital Collision.

**C. The Loan Agreement.**

9. Around March of 2005, Plaintiff loaned the principal sum of $80,000.00 to the owners of

2

the Capital Collision business which, at the time, were the HABP Entities as general partners of Capital Collision, G.P. The owners of the Capital Collision business are referred to herein as "Capital Collision."

10. At the time, Capital Collision had an option to purchase the land it was renting but lacked the necessary funds. Erik Pampalone and Eric Hinojosa, as corporate officers/directors, discussed the issue, and Erik Pampalone suggested to Eric Hinojosa that he could ask his mother, Plaintiff, to loan the funds to Capital Collision. Eric Hinojosa agreed that Erik Pampalone should ask Plaintiff to loan funds to Capital Collision.

11. Erik Pampalone, in his capacity as Vice-President of Capital Collision, approached Plaintiff and proposed that Plaintiff loan Capital Collision the sum of $80,000.00 and, in exchange, Capital Collision would repay the $80,000.00 over a twenty year period, plus annual interest at the rate of 7%.

12. Plaintiff understood, and Capital Collision agreed, that the loaned funds would be used for business purposes, including the possible purchase of land.

13. Plaintiff had previously loaned funds to Capital Collision for business purposes in 2003 and, at the time of the loan at issue in this lawsuit, was being repaid by Capital Collision as agreed.

14. Plaintiff agreed to loan $80,000.00 to Capital Collision. Plaintiff performed under the terms of the agreement and paid the funds to Capital Collision in two installments: $50,000.00 on or about March 24, 2005, and the remaining $30,000.00 on or about April 13, 2005. [Exhs. P-1, P-2].

15. The loaned funds were deposited into Capital Collision's bank account, a Bank of America account held in the names of "Capital Collision" and "Eric Hinojosa."

3

16. The parties have stipulated that there is no signed promissory note for the loan. However, the terms of the loan were evidenced in yearly loan amortization schedules generated by Erik Pampalone and sent to Defendants and their representatives. [Exhs. P-5, P-7, P-9, P-12, P-12A, P-13, P-15, P-16, P-17].

17. The statute of frauds does not bar the agreement, even though it is not in writing, because Plaintiff fully performed under the agreement, and Defendant Austin Capital Collision, LLC, partially performed.

### D. Payments on the Loan.

18. Thereafter, beginning on or about May 20, 2005, Capital Collision began performing under the agreement by making monthly payments on the loan pursuant to the agreed upon terms. Payments were made by electronic bill payment from Capital Collision's Bank of America account held in the names of "Eric Hinojosa" and "Capital Collision" into Plaintiff's bank account.

19. The parties stipulated that from May 2005 through April 2013, Plaintiff received 94 monthly payments on the loan. [Exhs. P-3, P-3A].

20. The 94 monthly payments were made by Capital Collision to Plaintiff as repayment on the loan.

21. During this time period, there was email correspondence among the parties and persons acting on their behalf acknowledging the existence of the loan and Defendants' indebtedness to Plaintiff thereunder. [Exhs. P-5, P-7, P-8, P-9, P-10, P-11, P-12, P-12A, P-13, P-15, P-16, P-17].

### E. Defendant Austin Capital Collision's Assumption of the Loan.

22. Erik Pampalone began the process of leaving Capital Collision in 2006, and he formally resigned in approximately April of 2007. After resigning, Erik Pampalone assisted Plaintiff in

4

oversight of repayment of the loan, corresponding by telephone and email with Defendant Eric Hinojosa and other Capital Collision employees concerning the loan.

23. Following Erik Pampalone's resignation, Defendant Eric Hinojosa became and remained the sole officer/director of Capital Collision. Capital Collision continued to repay the Loan to Plaintiff pursuant to the agreed upon terms.

24. In June of 2009, Defendant Eric Hinojosa formed a new company, Defendant Austin Capital Collision, LLC, [Exh. P-20] which became the owner of the Capital Collision business and filed an assumed name of "Capital Collision." [Exhs. P-21, 22].

25. Following its formation, Defendant Austin Capital Collision, LLC, assumed the loan to Plaintiff.

26. Approximately one year later, in July of 2010, Defendant Eric Hinojosa terminated the HABP Entities (and, accordingly, the general partnership). [Exh. P-24].

27. At the time of termination of the HABP Entities and formation of Austin Capital Collision, LLC, all entities were operated solely by Defendant Eric Hinojosa.

28. Defendant Eric Hinojosa did not provide notice—statutory or otherwise—to Plaintiff or Erik Pampalone that he was terminating the HABP Entities or that Capital Collision was owned or being operated by a new entity, Austin Capital Collision, LLC.

29. Although there was no formal purchase or transfer of assets between Austin Capital Collision, LLC, and the HABP Entities, Austin Capital Collision, LLC, continued to use the same assumed name, business email address (cptlcollision@aol.com) and email signature block (with the same name and physical address) as the as the HABP Entities [Exh. P-14]. Austin Capital Collision, LLC, also retained some of the same employees, took over control of the bank accounts of the HABP Entities, and operated the same general business as the HABP Entities.

5

30. Prior to institution of this lawsuit, neither Plaintiff nor Erik Pampalone was aware or had any reason to be aware that the HABP Entities had been terminated or that a new entity, Austin Capital Collision, LLC, was operating the business and using the assumed name of Capital Collision.

31. Following formation of Austin Capital Collision, LLC, and termination of the HABP Entities, Austin Capital Collision, LLC, d/b/a Capital Collision continued to make payments to Plaintiff pursuant to the agreed upon terms of the loan.

32. Austin Capital Collision, LLC, d/b/a Capital Collision made its payments from the Bank of America account held in the names of "Eric Hinojosa" and "Capital Collision" until approximately March of 2010 when the payments began being made from a Bank of America account held in the names of "Eric Hinojosa" and "Capital Collision GP." Because the payments were electronically deposited into Plaintiff's bank account, Plaintiff was not aware of any change in the bank account making the payments to her.

33. Defendant Austin Capital Collision, LLC, d/b/a Capital Collision was operating the Bank of America accounts making the payments to Plaintiff. Its sole managing member and majority owner, Defendant Eric Hinojosa, intentionally put money into the Bank of America account held in the names of "Eric Hinojosa" and "Capital Collision, GP" to cover the monthly bill payments to Plaintiff on the loan.

34. After Austin Capital Collision, LLC, was formed, Erik Pampalone, acting on behalf of Plaintiff, continued to send correspondence concerning Plaintiff's loan to the cptlcollision@aol.com email address. [Exhs. P-12a, P-13, P-14]. In response, Austin Capital Collision, LLC, d/b/a Capital Collision continued to make payments on the loan as agreed. [Exhs. P-3, P-3A].

6

35. In September of 2012, Erik Pampalone, acting on behalf of Plaintiff, sent an email to cptlcollision@aol.com requesting that Eric Hinojosa change where he was sending the monthly deposits to Plaintiff on her loan to Capital Collision. [Exh. P-14]. In response, Mirium Matta, Eric Hinojosa's sister-in-law and an employee of Austin Capital Collision, LLC, responded from the cptlcollision@aol.com email with "received and updated." [Exh. P-14].

36. Austin Capital Collision, LLC, acknowledged the loan to Plaintiff and its indebtedness thereunder through its conduct and course of performance.

### F. *Austin Capital Collision, LLC's, Default on the Loan.*

37. Defendant Austin Capital Collision, LLC, d/b/a Capital Collision made its last regular monthly payment on the loan in April of 2013. [Exhs. P-3, P-3A].

38. In October of 2013, Austin Capital Collision, LLC, d/b/a Capital Collision made a payment of $6,000.00 to Plaintiff. [Exhs. P-3, P-3A]. No further payments have been made to Plaintiff. Austin Capital Collision, LLC, d/b/a Capital Collision has breached and defaulted on the loan to Plaintiff.

39. Plaintiff made demand for payment upon Defendants, but Defendants failed and refused to cure the default on the loan. [Exhs. P-16, P-25].

### G. *Plaintiff's Damages.*

40. As a result of Defendant Austin Capital Collision, LLC's, default on the loan to Plaintiff, Plaintiff has suffered damages.

41. The parties stipulated that the amount due and owing on the loan as of the date of trial is $56,758.68.

### H. *Attorneys' Fees.*

42. As a result of Defendants' default, Plaintiff was compelled to file the instant lawsuit and

7

incur attorneys' fees and costs associated with same.

43. Through April 2015, Plaintiff incurred attorneys' fees in the amount of $44,950.30. [Exh. P-18]. Plaintiff's fees incurred through trial are in excess of $90,000.00. These fees are reasonable and necessary in Travis County, Texas.

44. The parties stipulated to Ms. Robbi's qualifications to present attorneys' fees testimony and the reasonableness of the hourly rates being charged.

45. Plaintiff's attorneys were required to expend significant time engaging in discovery, drafting and filing a motion to dismiss claims asserted by Defendants, compelling discovery from Defendants, attempting to subpoena documents from Defendants' accountant, preparing for and attending depositions and mediation, attending hearings on Defendants' special exceptions and motion for continuance, preparing for and attending trial, and drafting pre-trial motions, including a motion to exclude the testimony of Defendant's corporate representative, Eric Hinojosa, who was wholly unprepared for his deposition in which it was agreed he would provide answers in his individual capacity and as the corporate representative for Defendant Austin Capital Collision, LLC.

46. Plaintiff's reasonable and necessary fees for Travis County in the event of an unsuccessful appeal by either Defendant to the Court of Appeals are $20,000.00.

47. Plaintiff's reasonable and necessary fees for Travis County in the event of an unsuccessful appeal by either Defendant to the Texas Supreme Court are $20,000.00.

*I. Other Findings by the Court.*

48. Defendant Eric Hinojosa lacks credibility, especially in light of the fact that Eric Hinojosa was wholly unprepared for his corporate representative deposition, had not reviewed a single document produced in the lawsuit or otherwise talked to any Austin Capital Collision, LLC,

8

employees or representatives regarding the designated deposition topics, and demonstrated a repeated inability to provide substantive responses on his own behalf or on behalf of Austin Capital Collision, LLC. Further, at trial of this cause, Eric Hinojosa tried to change many of the answers he provided at his deposition which occurred approximately one month before trial.

### III. Conclusions of Law

#### A. Breach of Contract.

49. Plaintiff and Capital Collision ("Capital Collision," as indicated, *supra*, referring to the owners of the Capital Collision business which, at the time, were the HABP Entities as the general partners of Capital Collision, G.P.) intended to and did enter into an agreement whereby Plaintiff would loan the sum of $80,000.00 to Capital Collision and, in exchange, Capital Collision would repay the loan over 20 years at 7% interest.

50. This agreement constitutes a valid, enforceable contract.

51. The statute of frauds does not bar the agreement, even though it is not in writing, because Plaintiff fully performed under the agreement, and Defendant Austin Capital Collision, LLC, d/b/a Capital Collision partially performed.

52. Plaintiff fully performed under the terms of the agreement, paying the sum of $80,000.00 to Capital Collision.

53. Capital Collision performed on the agreement prior to the termination of the HABP Entities by making monthly payments on the loan as agreed.

54. Austin Capital Collision, LLC, d/b/a Capital Collision assumed the loan from the HABP Entities though its conduct and course of performance, including by continuing to make payments on the loan in accordance with the terms of the agreement.

55. Austin Capital Collision, LLC, d/b/a Capital Collision partially performed on the agreement

9

by continuing to make payments on the loan to Plaintiff in accordance with the terms of the agreement.

56. Austin Capital Collision, LLC, defaulted on the loan.

57. As a result of Austin Capital Collision, LLC's, default, Plaintiff suffered damages in the amount of $56,758.68. Accordingly, Plaintiff is entitled to recover the sum of $56,758.68 from Defendant Austin Capital Collision, LLC.

58. Plaintiff is entitled to post-judgment interest at the rate of 5%.

**B. *Attorneys' Fees.***

59. Because this is an expedited action under Texas Rule of Civil Procedure 169 and Plaintiff cannot recover more than $100,000.00 inclusive of attorneys' fees, Plaintiff is entitled to attorneys' fees in the amount of $43,241.32 which fees are reasonable and necessary in Travis County, Texas.

60. Plaintiff is entitled to a conditional award of $20,000.00 in the case of an unsuccessful appeal by either Defendant to the Court of Appeals. This sum is reasonable and necessary in Travis County, Texas.

61. Plaintiff is entitled to an additional conditional award of $20,000.00 in the case of an unsuccessful appeal by either Defendant to the Texas Supreme Court. This sum is reasonable and necessary in Travis County, Texas.

**C. *Defendants' Affirmative and Other Defenses.***

62. All of Defendants' affirmative or other defenses as alleged in its Fourth Amended Original Answer, Verified Denial and Special Exceptions lack merit and any relief associated with same is expressly denied.

63. Any conclusion of law deemed a finding of fact is hereby adopted as such.

10

SIGNED this \_\_\_\_7th\_\_\_\_ day of July, 2015.

_____
THE HONORABLE TODD WONG

11

3

Vernon's Texas Statutes and Codes Annotated
  Business Organizations Code (Refs & Annos)
    Title 1. General Provisions (Refs & Annos)
      Chapter 11. Winding up and Termination of Domestic Entity
        Subchapter B. Winding up of Domestic Entity

V.T.C.A., Business Organizations Code § 11.052

§ 11.052. Winding Up Procedures

Effective: September 1, 2013
Currentness

(a) Except as provided by the title of this code governing the domestic entity, on the occurrence of an event requiring winding up of a domestic entity, unless the event requiring winding up is revoked under Section 11.151 or canceled under Section 11.152, the owners, members, managerial officials, or other persons specified in the title of this code governing the domestic entity shall, as soon as reasonably practicable, wind up the business and affairs of the domestic entity. The domestic entity shall:

(1) cease to carry on its business, except to the extent necessary to wind up its business;

(2) if the domestic entity is not a general partnership, send a written notice of the winding up to each known claimant against the domestic entity;

(3) collect and sell its property to the extent the property is not to be distributed in kind to the domestic entity's owners or members; and

(4) perform any other act required to wind up its business and affairs.

(b) During the winding up process, the domestic entity may prosecute or defend a civil, criminal, or administrative action.

**Credits**
Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006. Amended by Acts 2013, 83rd Leg., ch. 9 (S.B. 847), § 3, eff. Sept. 1, 2013.

Notes of Decisions (5)

V. T. C. A., Business Organizations Code § 11.052, TX BUS ORG § 11.052
Current through the end of the 2015 Regular Session of the 84th Legislature

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works

4

Vernon's Texas Statutes and Codes Annotated
  Business Organizations Code (Refs & Annos)
    Title 1. General Provisions (Refs & Annos)
      Chapter 11. Winding up and Termination of Domestic Entity
        Subchapter H. Claims Resolution on Termination

V.T.C.A., Business Organizations Code § 11.356

§ 11.356. Limited Survival After Termination

Effective: January 1, 2006
Currentness

(a) Notwithstanding the termination of a domestic filing entity under this chapter, the terminated filing entity continues in existence until the third anniversary of the effective date of the entity's termination only for purposes of:

(1) prosecuting or defending in the terminated filing entity's name an action or proceeding brought by or against the terminated entity;

(2) permitting the survival of an existing claim by or against the terminated filing entity;

(3) holding title to and liquidating property that remained with the terminated filing entity at the time of termination or property that is collected by the terminated filing entity after termination;

(4) applying or distributing property, or its proceeds, as provided by Section 11.053; and

(5) settling affairs not completed before termination.

(b) A terminated filing entity may not continue its existence for the purpose of continuing the business or affairs for which the terminated filing entity was formed unless the terminated filing entity is reinstated under Subchapter E. [1]

(c) If an action on an existing claim by or against a terminated filing entity has been brought before the expiration of the three-year period after the date of the entity's termination and the claim was not extinguished under Section 11.359, the terminated filing entity continues to survive for purposes of:

(1) the action until all judgments, orders, and decrees have been fully executed; and

(2) the application or distribution of any property of the terminated filing entity as provided by Section 11.053 until the property has been applied or distributed.

**Credits**

Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006.

Footnotes

1      V.T.C.A., Business Organizations Code § 11.201 et seq.

V. T. C. A., Business Organizations Code § 11.356, TX BUS ORG § 11.356

Current through the end of the 2015 Regular Session of the 84th Legislature

End of Document                                        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

5

Vernon's Texas Statutes and Codes Annotated
  Business Organizations Code (Refs & Annos)
    Title 2. Corporations (Refs & Annos)
      Chapter 21. For-Profit Corporations (Refs & Annos)
        Subchapter E. Shareholder Rights and Restrictions

V.T.C.A., Business Organizations Code § 21.223

§ 21.223. Limitation of Liability for Obligations

Effective: September 1, 2007
Currentness

(a) A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber or of the corporation, may not be held liable to the corporation or its obligees with respect to:

(1) the shares, other than the obligation to pay to the corporation the full amount of consideration, fixed in compliance with Sections 21.157-21.162, for which the shares were or are to be issued;

(2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory; or

(3) any obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality, including the failure to:

(A) comply with this code or the certificate of formation or bylaws of the corporation; or

(B) observe any requirement prescribed by this code or the certificate of formation or bylaws of the corporation for acts to be taken by the corporation or its directors or shareholders.

(b) Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate.

**Credits**
Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006. Amended by Acts 2007, 80th Leg., ch. 688, § 74, eff. Sept. 1, 2007.

Notes of Decisions (213)

V. T. C. A., Business Organizations Code § 21.223, TX BUS ORG § 21.223
Current through the end of the 2015 Regular Session of the 84th Legislature

End of Document © 2015 Thomson Reuters. No claim to original U.S. Government Works.

6

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted **Negative Treatment Vacated by** Gulley v. Sunbelt Sav., F.S.B., 5th Cir.(Tex.), June 01, 1990

Vernon's Texas Statutes and Codes Annotated
  Business and Commerce Code (Refs & Annos)
    Title 3. Insolvency, Fraudulent Transfers, and Fraud
      Chapter 24. Uniform Fraudulent Transfer Act (Refs & Annos)

V.T.C.A., Bus. & C. § 24.006
Formerly cited as V.T.C.A., Bus. & C. Code § 24.03

§ 24.006. Transfers Fraudulent as to Present Creditors

Currentness

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

**Credits**
Amended by Acts 1987, 70th Leg., ch. 1004, § 1, eff. Sept. 1, 1987.

Notes of Decisions (253)

V. T. C. A., Bus. & C. § 24.006, TX BUS & COM § 24.006
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works

7

---

Vernon's Texas Rules Annotated
 Texas Rules of Appellate Procedure
  Section Two. Appeals from Trial Court Judgments and Orders (Refs & Annos)
   Rule 43. Judgment of the Court of Appeals (Refs & Annos)

---

TX Rules App.Proc., Rule 43.3

43.3. Rendition Appropriate Unless Remand Necessary

Currentness

When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when:

(a) a remand is necessary for further proceedings; or

(b) the interests of justice require a remand for another trial.

**Credits**
Eff. Sept. 1, 1997.

Notes of Decisions (52)

Rules App. Proc., Rule 43.3, TX R APP Rule 43.3
Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure are current with amendments received through September 1, 2015. Bar Rules, Rules of Disciplinary Procedure, Code of Judicial Conduct, and Rules of Judicial Administration are current with amendments received through September 1, 2015. Other state court rules and selected county rules are current with rules verified through June 1, 2015.

---

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

8

| BARBARA PAMPALONE, | § | IN THE DISTRICT COURT |
|---|---|---|
| *Plaintiff*, | § | |
| | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ERIC HINOJOSA AND AUSTIN | § | |
| CAPITAL COLLISION, LLC, | § | |
| | § | |
| *Defendants.* | § | 419TH JUDICIAL DISTRICT |

## Summary of Payments Made by Defendants to Plaintiff

| No. | Date | Amount | Bank Account |
|---|---|---|---|
| 1. | 05/20/2005 | $675.09 | |
| 2. | 06/20/2005 | $675.09 | |
| 3. | 07/20/2005 | $675.09 | Bank of America Business Advantage |
| 4. | 08/19/2005 | $675.09 | Checking Account No. XXXX XXXX |
| 5. | 09/20/2005 | $675.09 | 9118 |
| 6. | 10/20/2005 | $675.09 | |
| 7. | 11/18/2005 | $675.09 | Capital Collision |
| 8. | 12/20/2005 | $675.09 | Eric A. Hinojosa |
| 9. | 01/20/2006 | $675.09 | |
| 10. | 02/17/2006 | $675.09 | |
| 11. | 03/20/2006 | $675.09 | |
| 12. | 04/20/2006 | $675.09 | |
| 13. | 05/19/2006 | $675.09 | |
| 14. | 06/20/2006 | $675.09 | |
| 15. | 07/20/2006 | $675.09 | |
| 16. | 08/18/2006 | $675.09 | |
| 17. | 09/20/2006 | $675.09 | |
| 18. | 10/20/2006 | $675.09 | |
| 19. | 11/20/2006 | $675.09 | |
| 20. | 12/20/2006 | $675.09 | |
| 21. | 01/19/2007 | $675.09 | |
| 22. | 02/20/2007 | $675.09 | |
| 23. | 03/20/2007 | $675.09 | |
| 24. | 04/20/2007 | $675.09 | |
| 25. | 05/18/2007 | $675.09 | |
| 26. | 06/20/2007 | $675.09 | |
| 27. | 07/20/2007 | $675.09 | |
| 28. | 08/06/2007 | $505.07 | |
| | 08/20/2007 | $170.02 | |



PLAINTIFF'S EXHIBIT 3

| No. | Date | Amount | Bank Account |
|---|---|---|---|
| 29. | 09/20/2007 | $675.09 | |
| 30. | 10/19/2007 | $675.09 | |
| 31. | 11/20/2007 | $675.09 | |
| 32. | 12/20/2007 | $675.09 | |
| 33. | 01/18/2008 | $675.09 | |
| 34. | 02/20/2008 | $675.09 | |
| 35. | 03/20/2008 | $675.09 | |
| 36. | 04/18/2008 | $675.09 | |
| 37. | 05/20/2008 | $675.09 | |
| 38. | 06/20/2008 | $675.09 | |
| 39. | 07/18/2008 | $675.09 | |
| 40. | 08/20/2008 | $675.09 | |
| 41. | 09/19/2008 | $675.09 | |
| 42. | 10/20/2008 | $675.09 | |
| 43. | 11/20/2008 | $675.09 | |
| 44. | 12/19/2008 | $675.09 | |
| 45. | 01/20/2009 | $675.09 | |
| 46. | 02/20/2009 | $675.09 | |
| 47. | 03/20/2009 | $675.09 | |
| 48. | 04/20/2009 | $675.09 | |
| 49. | 05/20/2009 | $675.09 | |
| 50. | 06/19/2009 | $675.09 | |
| 51. | 07/20/2009 | $675.09 | |
| 52. | 08/20/2009 | $675.09 | |
| 53. | 09/18/2009 | $675.09 | |
| 54. | 10/20/2009 | $675.09 | |
| 55. | 11/20/2009 | $675.09 | |
| 56. | 12/20/2009 | $675.09 | |
| 57. | 01/20/2010 | $675.09 | |
| 58. | 02/19/2010 | $675.09 | |
| 59. | 03/19/2010 | $675.09 | |
| 60. | 04/20/2010 | $675.09 | Bank of America Business Advantage Checking Account No. XXXX XXXX 4193 |
| 61. | 05/20/2010 | $675.09 | |
| 62. | 06/18/2010 | $675.09 | |
| 63. | 07/20/2010 | $675.09 | |
| 64. | 08/20/2010 | $675.09 | Capital Collision GP |
| 65. | 09/20/2010 | $675.09 | Eric A. Hinojosa |
| 66. | 10/20/2010 | $675.09 | |
| 67. | 11/19/2010 | $675.09 | |
| 68. | 12/20/2010 | $675.09 | |
| 69. | 01/20/2011 | $675.09 | |
| 70. | 02/18/2011 | $675.09 | |
| | 03/--/2011 | -- | |
| | 04/--/2011 | -- | |

| No. | Date | Amount | Bank Account |
|-----|------|--------|--------------|
|  | 05/--/2011 | -- |  |
| 71. | 06/10/2011 | $675.00 |  |
| 72. | 06/20/2011 | $675.00 |  |
| 73. | 07/20/2011 | $675.00 |  |
| 74. | 08/19/2011 | $675.00 |  |
| 75. | 09/20/2011 | $675.00 |  |
| 76. | 10/20/2011 | $675.00 |  |
| 77. | 11/18/2011 | $675.00 |  |
| 78. | 12/20/2011 | $675.00 |  |
| 79. | 01/20/2012 | $675.00 |  |
| 80. | 02/17/2012 | $675.00 |  |
| 81. | 03/20/2012 | $675.00 |  |
| 82. | 04/20/2012 | $675.00 |  |
| 83. | 05/18/2012 | $675.00 |  |
| 84. | 06/20/2012 | $675.00 |  |
| 85. | 07/20/2012 | $675.00 |  |
| 86. | 08/20/2012 | $675.00 |  |
| 87. | 09/20/2012 | $675.00 |  |
| 88. | 10/19/2012 | $675.00 |  |
| 89. | 11/20/2012 | $675.00 |  |
| 90. | 12/20/2012 | $675.00 |  |
| 91. | 01/18/2013 | $675.00 |  |
| 92. | 02/20/2013 | $675.00 |  |
| 93. | 03/20/2013 | $675.00 |  |
| 94. | 04/19/2013 | $675.00 |  |
|  | 05/--/2013 |  |  |
|  | 06/--/2013 |  |  |
|  | 07/--/2013 |  |  |
|  | 08/--/2013 |  |  |
|  | 09/--/2013 |  |  |
| 95. | 10/25/2013 | $6,000.00 |  |

9

H

Page 1 of 4
Statement Period
02/01/16 through 02/29/16
CO   P PE  OF 48          0142209
Enclosures 0
Account Number



Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

01059 001 SCM999 I 2 4 0

CAPITAL COLLISION
ERIC A HINOJOSA
4304 BURCH DR
DEL VALLE TX 78617-3273

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
With Online Banking you can also view up to 18 months of this statement online.
Enroll at www.bankofamerica.com/smallbusiness.

**Customer Service Information**
**www.bankofamerica.com**

For additional information or service you may call                 Or you may write to:
1.888.BUSINESS (1.888.287.4637)                                         Bank of America, N.A.
                                                                                                    P.O. Box 25118
                                                                                                    Tampa, FL 33622-5118

We recently made changes to our Overdraft Protection Transfer Fee to better serve you. Effective immediately, when we determine your account is overdrawn by a total amount less than $10 for a day and we transfer funds from your linked savings account or line of credit to cover it, we will not charge an Overdraft Protection Transfer Fee. Overdraft Protection lets you link your checking account to another account to help avoid overdrafts. If you haven't already signed up, call the number on your statement or visit your nearby banking center and an associate can help you.

Stay ahead of your bills - such as rent, mortgage, credit card or utility payments - by setting up automatic reminders to be sent right to your e-mail or smart phone. With Payment Reminders from Bank of America®, it's easy to know when a payment is due.

Get started at bankofamerica.com/solutions today.

H

Page 2 of 4
Statement Period
02/01/10 through 02/28/10
EO P PE OE 48
Enclosures 0
Account Number ███████████

CAPITAL COLLISION
ERIC A HINOJOSA

```
░░░░░░░░░░░░░░░░░░░░░  Deposit Accounts  ░░░░░░░░░░░░░░░░░░░░░
```

## Business Advantage Checking

### CAPITAL COLLISION   ERIC A HINOJOSA

#### Your Account at a Glance

| | | | |
|---|---|---|---|
| Account Number | ███████████ | Statement Beginning Balance | $3,711.24 |
| Statement Period | 02/01/10 through 02/28/10 | Amount of Deposits/Credits | $7,002.90 |
| Number of Deposits/Credits | 8 | Amount of Withdrawals/Debits | $10,501.42 |
| Number of Withdrawals/Debits | 21 | Statement Ending Balance | $212.72 |
| Number of Deposited Items | 6 | | |
| | | Average Ledger Balance | $2,174.17 |
| Number of Days in Cycle | 28 | Service Charge | $0.00 |

Your account has overdraft protection provided by Line of Credit number 6871 1022 401299.

#### Your Business Advantage Pricing Relationship

| Account Name | Account Number | Qualifying Balance ($) | Type of Balance | Date |
|---|---|---|---|---|
| Business Advantage Checking | ███████████ | 2,549.01 | Average | 02-25 |
| | Total Qualifying Balance | $2,549.01 | | |

Please note that the balances in your account(s) are below the minimum required to avoid the monthly maintenance fee. To give you time to make adjustments, we have waived the monthly maintenance fee for this statement cycle ending 02/28/10. If you have questions about your account or would like to discuss how you may avoid the monthly fee, please call us at the number listed above.

#### Deposits and Credits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 02/04 | 2,022.19 | Deposit | 813204730657492 |
| 02/05 | 1,756.00 | Deposit | 813204730902628 |
| 02/09 | 1,628.46 | Deposit | 813204730269247 |
| 02/11 | 321.16 | Deposit | 813204730526383 |
| 02/16 | 675.09 | Online Banking transfer from Chk 4193 Confirmation# 0136551719 | 957202167505928 |
| 02/19 | 300.00 | Overdraft Protection From 68711022401299 | 080602190005922 |
| 02/22 | 100.00 | Overdraft Protection From 68711022401299 | 080602220011991 |
| 02/25 | 200.00 | BankCard     Des:Merch Sett ID:430134840051477 Indn:Capital Collision     Co ID:1210001923 Ccd | 902556010903684 |

H

Page 3 of 4
Statement Period
02/01/10 through 02/28/10
EO P PE OE 48        0142211
Enclosures 0
Account Number ███████

CAPITAL COLLISION
ERIC A HINOJOSA

## Withdrawals and Debits

### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 02/01 | 436.45 | Mitchell International Bill Payment | 943202010008790 |
| 02/01 | 71.15 | BankCard    Des:Merch Fees ID:430134840051477 Indn:Capital Collision    Co ID:3210001923 Ccd | 902532006926873 |
| 02/01 | 6.47 | Mitchell International Bill Payment | 943202010008800 |
| 02/02 | 39.95 | Discover Network Des:Settlement ID:601101323656387 Indn:Eric A. Hinojosa, Dba    Co ID:1510020270 Ccd | 902532010206729 |
| 02/04 | 1,000.00 | Online Banking transfer to Chk 4193 Confirmation# 3932735010 | 957102047530162 |
| 02/04 | 700.00 | Home Depot    Des:Online Pmt ID:560028980320388 Indn:Capital Collision Gp    Co ID:Citicesweb Web | 902534010998444 |
| 02/05 | 500.00 | Ge Money    Des:Payment    ID:504662014152661 Indn:Hinojosa,Eric    Co ID:1061537262 Web | 902535005381136 |
| 02/05 | 200.00 | Mbna Credit Cards Bill Payment | 943202050008802 |
| 02/08 | 516.35 | Exxonmobil Comm  Des:Online Pmt ID:560030708322458 Indn:Capital Collision    Co ID:Citioilweb Web | 902536010818361 |
| 02/09 | 1,600.00 | Online Banking transfer to Chk 4193 Confirmation# 0375764844 | 957202097591378 |
| 02/16 | 3,211.69 | Online Banking transfer to Chk 4193 Confirmation# 6228127454 | 957302167513449 |
| 02/16 | 1,146.06 | 2 Pawnee Leasing Des:Lease Pmt  ID:320955 Indn:Capital Collision G.P.  Co ID:3840884553 Ppd | 902547007520285 |
| 02/16 | 100.00 | Dell Commercial Credit Bill Payment | 943202160008797 |
| 19 | 675.09 | Barbara Pampalone Bill Payment | 943202190008795 |
| 19 | 10.00 | Overdraft Protection Transfer Fee | 080602190005923 |
| 02/22 | 10.00 | Overdraft Protection Transfer Fee | 080602220011992 |

Card Account # ███████ :

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 02/01 | 25.91 | CheckCard  0129 LA Madeline Corps | 905701291164022 |
| 02/01 | 8.04 | CheckCard  0129 Exxonmobil    47647839 | 905701290007749 |
| 02/04 | 79.80 | CheckCard  0202 Mamacitas San Antonio | 905702020337081 |
| 02/04 | 43.24 | CheckCard  0202 Sac N Pac 108 | 905702020739800 |
| 02/22 | 121.22 | CheckCard  0220 Umi Sushi Bar&grillbar | 905702200677744 |
| Subtotal | 278.21 | | |

### Daily Ledger Balances

| Date | Balance ($) | Date | Balance ($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 02/01 | 3,163.22 | 02/08 | 3,862.07 | 02/19 | 43.94 |
| 02/02 | 3,123.27 | 02/09 | 3,890.53 | 02/22 | 12.72 |
| 02/04 | 3,322.42 | 02/11 | 4,211.69 | 02/25 | 212.72 |
| 02/05 | 4,378.42 | 02/16 | 429.03 | | |



**Bank of America**



Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

01099 001 SCM999 1 2 4 0

CAPITAL COLLISION GP
ERIC A HINOJOSA
4304 BURCH DR
DEL VALLE TX 78617-3273

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
With Online Banking you can also view up to 18 months of this statement online.
Enroll at www.bankofamerica.com/smallbusiness.

## Customer Service Information
## www.bankofamerica.com

For additional information or service you may call:
☎  1-888-BUSINESS (1-888-287-4637)

Or you may write to:
✉  Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

---

We recently made changes to our Overdraft Protection Transfer Fee to better serve you. Effective immediately, when we determine your account is overdrawn by a total amount less than $10 for a day and we transfer funds from your linked savings account or line of credit to cover it, we will not charge an Overdraft Protection Transfer Fee. Overdraft Protection lets you link your checking account to another account to help avoid overdrafts. If you haven't already signed up, call the number on your statement or visit your nearby banking center and an associate can help you.

---

Stay ahead of your bills - such as rent, mortgage, credit card or utility payments - by setting up automatic reminders to be sent right to your e-mail or smart phone. With **Payment Reminders** from Bank of America®, it's easy to know when a payment is due.

Get started at bankofamerica.com/solutions today.

H

CAPITAL COLLISION GP
ERIC A HINOJOSA

## Deposit Accounts

## Business Advantage Checking

### CAPITAL COLLISION GP   ERIC A HINOJOSA

#### Your Account at a Glance

| | | | |
|---|---|---|---|
| Account Number | ███████████ | Statement Beginning Balance | $2,524.80 |
| Statement Period | 02/01/10 through 02/28/10 | Amount of Deposits/Credits | $28,160.08 |
| Number of Deposits/Credits | 7 | Amount of Withdrawals/Debits | $23,675.12 |
| Number of Withdrawals/Debits | 38 | Statement Ending Balance | $7,009.76 |
| Number of Deposited Items | 7 | | |
| | | Average Ledger Balance | $6,613.07 |
| Number of Days in Cycle | 28 | Service Charge | $29.95 |

Help avoid Overdraft & NSF: Returned item fees. Use Alerts to get messages by email or text to inform you when your balance is low. Use Overdraft Protection to transfer available funds from linked savings, credit card, or credit line to your checking account to help cover items that would overdraw your account. Call us for details.

#### Your Business Advantage Pricing Relationship

| Account Name | Account Number | Qualifying Balance ($) | Type of Balance | Date |
|---|---|---|---|---|
| Business Advantage Checking | ███████████ | 6,129.33 | Average | 02-25 |
| | Total Qualifying Balance | $6,129.33 | | |

Based on your combined balance of $6,129.33, your Business Advantage account has been charged a monthly maintenance fee. You can avoid this fee in the future by maintaining $35,000 in combined balances.

#### Deposits and Credits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 02/02 | 5,000.00 | Online Banking advance from Loc 1299 Confirmation# 3915169063 | 957102027580889 |
| 02/04 | 1,000.00 | Online Banking transfer from Chk 9118 Confirmation# 3932735010 | 957102047530163 |
| 02/09 | 1,600.00 | Online Banking transfer from Chk 9118 Confirmation# 0375764844 | 957202097591379 |
| 02/16 | 3,211.69 | Online Banking transfer from Chk 9118 Confirmation# 6228127454 | 957302167513450 |
| 02/17 | 11,872.04 | Deposit | 813204830622344 |
| 02/17 | 1,164.60 | Deposit | 813204830622348 |
| 02/23 | 4,311.75 | Deposit | 813204730584475 |



H

CAPITAL COLLISION GP
ERIC A HINOJOSA

Account Number

## Withdrawals and Debits
### Checks

| Check Number | Amount ($) | Date Posted | Bank Reference | Check Number | Amount ($) | Date Posted | Bank Reference |
|---|---|---|---|---|---|---|---|
| 5095 | 557.40 | 02/01 | 813009992893654 | 20148 | 2.20 | 02/04 | 813009692604239 |
| 5097* | 550.00 | 02/12 | 813009892284554 | 20149 | 23.52 | 02/08 | 813006892470800 |
| 5103* | 184.38 | 02/16 | 813009292032928 | 20150 | 92.31 | 02/17 | 813009292693306 |
| 20061* | 95.00 | 02/03 | 813009392452627 | 20151 | 215.57 | 02/17 | 813009292693305 |
| 20088* | 340.00 | 02/03 | 813009392452626 | 20152 | 69.99 | 02/11 | 813009692786278 |
| 20091* | 12.98 | 02/08 | 813008792676531 | 20153 | 830.00 | 02/10 | 813006592162010 |
| 20123* | 500.00 | 02/18 | 813204730039963 | 20154 | 150.00 | 02/16 | 813008992748692 |
| 20129* | 71.00 | 02/01 | 813008892690586 | 20156* | 261.63 | 02/24 | 813009592563760 |
| 20131* | 95.00 | 02/05 | 813009892124599 | 20157 | 178.14 | 02/23 | 813009292733366 |
| 20139* | 671.25 | 02/08 | 813008892194461 | 20159* | 6,109.14 | 02/22 | 813008992027080 |
| 20140 | 116.65 | 02/02 | 813005992002173 | 20161* | 2,198.63 | 02/22 | 813006092750085 |
| 20141 | 747.81 | 02/04 | 813009592350002 | 20162 | 406.48 | 02/25 | 813004092553813 |
| 20143* | 600.00 | 02/08 | 813008792668691 | 20163 | 1,829.41 | 02/22 | 813002992359349 |
| 20144 | 3,272.55 | 02/08 | 813007692811653 | 20164 | 360.80 | 02/22 | 813204730398781 |
| 20145 | 172.00 | 02/08 | 813008792910492 | 20170* | 192.57 | 02/26 | 813009992586446 |
| 20147* | 64.88 | 02/12 | 813009992791685 | | | | |

* Gap in sequential check numbers.

### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 02/04 | 303.00 | Data Check      Des:Redepcheck ID:020085<br>Indn:Capital Collision Gp      Co ID:1261961596 Rck | 902535001904590 |
| 02/04 | 32.48 | Data Check      Des:NSF Fee      ID:020085<br>Indn:Capital Collision Gp      Co ID:1261961596 Ppd | 902535001904592 |
| 02/09 | 400.00 | Online Banking payment to Loc 1299<br>Confirmation# 5175071826 | 957302095105249 |
| 02/16 | 675.09 | Online Banking transfer to Chk 9118<br>Confirmation# 0136551719 | 957202167505927 |
| 02/25 | 663.31 | Trail Creek Inve Des:Note Pmt      ID:Capital Collisi<br>Indn:Capital Collision      Co ID:3262646872 Ccd | 902555005209896 |
| 02/26 | 600.00 | Mbna Line Of Credit Bill Payment | 943202260005105 |
| 02/26 | 29.95 | Monthly Maintenance Fee | |

### Total Overdraft Fees and NSF: Returned Item Fees

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $35.00 |
| Total NSF: Returned Item Fees | $0.00 | $105.00 |

### Daily Ledger Balances

| Date | Balance ($) | Date | Balance ($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 02/01 | 1,896.40 | 02/09 | 2,611.96 | 02/18 | 15,528.07 |
| 02/02 | 6,779.75 | 02/10 | 1,781.96 | 02/22 | 5,030.09 |
| 02/03 | 6,344.75 | 02/11 | 1,711.97 | 02/23 | 9,163.70 |
| 02/04 | 6,259.26 | 02/12 | 1,097.09 | 02/24 | 8,902.07 |
| 02/05 | 6,164.26 | 02/16 | 3,299.31 | 02/25 | 7,832.28 |
| 02/08 | 1,411.96 | 02/17 | 16,028.07 | 02/26 | 7,009.76 |

H

Page 1 of 4
Statement Period
03/01/10 through 03/31/10
E0   P PE   OE 48          0132656
Enclosures 0
Account Number

**Bank of America**

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

01099 001 SCM999 11     0

CAPITAL COLLISION
ERIC A HINOJOSA
4304 BURCH DR
DEL VALLE TX 78617-3273

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
With Online Banking you can also view up to 18 months of this statement online.
Enroll at www.bankofamerica.com/smallbusiness.

## Customer Service Information
### www.bankofamerica.com

For additional information or service, you may call
1.888.BUSINESS (1.888.287.4637)

Or you may write to:
Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Deposit Accounts

## Business Advantage Checking

### CAPITAL COLLISION  ERIC A HINOJOSA

#### Your Account at a Glance

| | | | |
|---|---|---|---|
| Account Number | | Statement Beginning Balance | $212.72 |
| Statement Period | 03/01/10 through 03/31/10 | Amount of Deposits/Credits | $14,318.31 |
| Number of Deposits/Credits | 5 | Amount of Withdrawals/Debits | $14,531.03 |
| Number of Withdrawals/Debits | 8 | Statement Ending Balance | $0.00 |
| Number of Deposited Items | 0 | | |
| | | Average Ledger Balance | $961.76 |
| Number of Days in Cycle | 31 | Service Charge | $0.00 |

Your account has overdraft protection provided by Line of Credit number 6871 1022 401299.

Page 2 of 4
Statement Period
03/01/10 through 03/31/10
EO  P  PE  OE 48
Enclosures 0
Account Number

CAPITAL COLLISION
ERIC A HINOJOSA

## Your Business Advantage Pricing Relationship

| Account Name | Account Number | Qualifying Balance ($) | Type of Balance | Date |
|---|---|---|---|---|
| Business Advantage Checking | | 922.81 | Average | 03-30 |
| | Total Qualifying Balance | $922.81 | | |

Please note that the balances in your account(s) are below the minimum required to avoid the monthly maintenance fee. We have waived the monthly maintenance fee for an additional cycle in case you need time to make balance adjustments. If your balances are below the minimums next month you'll still enjoy all the many benefits that come with your Business Advantage account, but the monthly maintenance fee will apply. Please call us at the number listed above if you have questions about your account.

## Deposits and Credits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 03/04 | 2,658.42 | Sf Mutual        Des:A25Sf0001   ID:xxxxx6250Ka0301 Indn:Capital Collision        Co ID:9A25Sf0001 Ccd Pmt Info:Nte°zzz*xxxxx6250Ka03011370533100 \ | 902562006583464 |
| 03/17 | 2,797.16 | Sf Mutual        Des:A25Sf0001   ID:xxxxx1236Ka0312 Indn:Capital Collision        Co ID:9A25Sf0001 Ccd Pmt Info:Nte°zzz*xxxxx1236Ka03121370533100 \ | 902575003591285 |
| 18 | 7,316.73 | Sf Mutual        Des:A25Sf0001   ID:xxxxx1784Ka0315 Indn:Capital Collision        Co ID:9A25Sf0001 Ccd Pmt Info:Nte*zzz*xxxxx1784Ka03151370533100 \ | 902576008234102 |
| 03/26 | 805.00 | BankCard        Des:Merch Setl ID:430134840051477 Indn:Capital Collision        Co ID:1210001923 Ccd | 902585006694446 |
| 03/29 | 741.00 | Online Banking transfer from Chk 4193 Confirmation# 5288477014 | 957303297562545 |

## Withdrawals and Debits

## Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 03/01 | 67.85 | BankCard        Des:Merch Fees ID:430134840051477 Indn:Capital Collision        Co ID:3210001923 Ccd | 902560012434131 |
| 03/02 | 89.90 | Discover Network Des:Settlement ID:601101323656387 Indn:Eric A. Hinojosa, Dba   Co ID:1510020270 Ccd | 902560015685838 |
| 03/04 | 794.00 | Home Depot        Des:Online Pmt ID:560053172331112 Indn:Capital Collision Gp   Co ID:Citiccsweb Web | 902562007188203 |
| 03/08 | 100.00 | Mbna Credit Cards Bill Payment | 943203080008804 |
| 03/18 | 11,342.43 | Online Banking transfer to Chk 4193 Confirmation# 0692331669 | 957203187554340 |
| 03/26 | 805.00 | Online Banking transfer to Chk 4193 Confirmation# 3762903721 | 957103267571096 |
| 03/31 | 741.00 | Home Depot        Des:Online Pmt ID:560076464300917 Indn:Capital Collision Gp   Co ID:Citiccsweb Web | 902589010785632 |

Card Account #

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 03/17 | 590.85 | CheckCard  0316 Enterprise Rent-A-Car | 905703161184929 |

H

Page 3 of 4
Statement Period
03/01/10 through 03/31/10
EO  P PE  OE 48          0132658
Enclosures 0
Account Number

CAPITAL COLLISION
ERIC A HINOJOSA

## Withdrawals and Debits - Continued
### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| Subtotal | 590.85 | | |

## Daily Ledger Balances

| Date | Balance ($) | Date | Balance ($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 03/01 | 144.87 | 03/08 | 1,819.39 | 03/29 | 741.00 |
| 03/02 | 54.97 | 03/17 | 4,025.70 | 03/31 | 0.00 |
| 03/04 | 1,919.39 | 03/18 | 0.00 | | |

**Bank of America**



Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

01059 001 SCM939 11     0
CAPITAL COLLISION GP
ERIC A HINOJOSA
4304 BURCH DR
DEL VALLE TX 78617-3273

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
With Online Banking you can also view up to 18 months of this statement online.
Enroll at www.bankofamerica.com/smallbusiness.

## Customer Service Information
### www.bankofamerica.com

For additional information or service, you may call:        Or you may write to:
☎ 1 888 BUSINESS (1 888 287 4637)                         ✉ Bank of America, N.A.
                                                             P.O. Box 25118
                                                             Tampa, FL 33622-5118

## Deposit Accounts

## Business Advantage Checking

### CAPITAL COLLISION GP   ERIC A HINOJOSA

### Your Account at a Glance

| | | | |
|---|---|---|---|
| Account Number | ████████████ | Statement Beginning Balance | $7,009.76 |
| Statement Period | 03/01/10 through 03/31/10 | Amount of Deposits/Credits | $16,357.41 |
| Number of Deposits/Credits | 6 | Amount of Withdrawals/Debits | $21,525.79 |
| Number of Withdrawals/Debits | 26 | Statement Ending Balance | $1,841.38 |
| Number of Deposited Items | 4 | | |
| | | Average Ledger Balance | $3,195.62 |
| Number of Days in Cycle | 31 | Service Charge | $29.95 |

Help avoid Overdraft & NSF: Returned Item fees. Use Alerts to get messages by email or text to inform you when your balance is low. Use Overdraft Protection to transfer available funds from linked savings, credit card, or credit line to your checking account to help cover items that would overdraw your account. Call us for details.

H

CAPITAL COLLISION GP
ERIC A HINOJOSA

Account Number █████████

## Your Business Advantage Pricing Relationship

| Account Name | Account Number | Qualifying Balance ($) | Type of Balance | Date |
|---|---|---|---|---|
| Business Advantage Checking | ██████████ | 3,582.49 | Average | 03-30 |
| Total Qualifying Balance | | 33,582.49 | | |

Based on your combined balance of $3,582.49, your Business Advantage account has been charged a monthly maintenance fee. You can avoid this fee in the future by maintaining $35,000 in combined balances.

## Deposits and Credits

| Date Posted | Amount ($) Description | Bank Reference |
|---|---|---|
| 03/08 | 497.50 Deposit | 813204730856298 |
| 03/18 | 11,342.43 Online Banking transfer from Chk 9118 Confirmation# 0692331669 | 957203187554341 |
| 03/22 | 2,593.20 Deposit | 813204730423785 |
| 03/23 | 319.20 Deposit | 813204730616062 |
| 03/26 | 805.00 Online Banking transfer from Chk 9118 Confirmation# 3762903721 | 957103267571097 |
| 03/29 | 800.08 Deposit | 813204730042952 |

## Withdrawals and Debits
### Checks

| Check Number | Amount ($) | Date Posted | Bank Reference | Check Number | Amount ($) | Date Posted | Bank Reference |
|---|---|---|---|---|---|---|---|
| 5101 | 557.40 | 03/01 | 813008992894512 | 20172 | 213.10 | 03/02 | 813003092277479 |
| 5102 | 550.00 | 03/12 | 813009092482164 | 20173 | 434.51 | 03/01 | 813008992065404 |
| 5106° | 675.09 | 03/18 | 813008992036196 | 20174 | 15.00 | 03/04 | 813009892820470 |
| 20160° | 271.00 | 03/09 | 813009692184126 | 20175 | 500.00 | 03/23 | 813009792480484 |
| 20167° | 219.96 | 03/01 | 813006192752812 | 20176 | 10,113.89 | 03/19 | 813008992770587 |
| 20169° | 1,142.98 | 03/01 | 813006192220154 | 20177 | 623.77 | 03/25 | 813204730673173 |
| 20171° | 380.00 | 03/01 | 813008792863716 | | | | |

° Gap in sequential check numbers.

## Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 03/01 | 100.00 | 3 Pawnee Leasing Des:Lease Pmt ID:320955 Indn:Capital Collision G.P. Co ID:4840884553 Ppd | 902560009530707 |
| 03/02 | 400.00 | Bank of America - Line of Credit Bill Payment | 943203020005110 |
| 03/04 | 500.00 | Ge Money Des:Payment ID:504662014152661 Indn:Hinojosa,Eric Co ID:1061537262 Web | 902562006293580 |
| 03/11 | 91.37 | 3 Pawnee Leasing Des:Lease Pmt ID:320955 Indn:Capital Collision G.P. Co ID:4840884553 Ppd | 902569012489754 |
| 03/15 | 1,146.06 | 2 Pawnee Leasing Des:Lease Pmt ID:320955 Indn:Capital Collision G.P. Co ID:3840884553 Ppd | 902574003359778 |
| 03/16 | 100.00 | Dell Commercial Credit Bill Payment | 943203160005104 |
| 03/25 | 663.31 | Trail Creek Inve Des:Note Pmt ID:Capital Collisi Indn:Capital Collision Co ID:3262646872 Ccd | 902583009909906 |



CAPITAL COLLISION GP
ERIC A HINOJOSA

## Withdrawals and Debits – Continued
### Other Debits

| Date Posted | Amount (S) | Description | Bank Reference |
|---|---|---|---|
| 03/26 | 600.00 | Mbna Line Of Credit Bill Payment | 943203260005108 |
| 03/29 | 741.00 | Online Banking transfer to Chk 9118 Confirmation# 5288477014 | 957303297562544 |
| 03/29 | 500.00 | Ge Money      Des:Payment      ID:504662014152661 Indn:Hinojosa,Eric      Co ID:1061537262 Web | 902588010526693 |
| 03/29 | 400.00 | Bank of America - Line of Credit Bill Payment | 943203290005114 |
| 03/30 | 557.40 | Marlin Leasing  Bill Payment | 943203300005107 |
| 03/31 | 29.95 | Monthly Maintenance Fee | |

## Total Overdraft Fees and NSF: Returned Item Fees

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $35.00 |
| Total NSF: Returned Item Fees | $0.00 | $105.00 |

## Daily Ledger Balances

| Date | Balance (S) | Date | Balance (S) | Date | Balance (S) |
|---|---|---|---|---|---|
| 03/01 | 4,174.91 | 03/12 | 2,631.94 | 03/23 | 4,351.73 |
| 03/02 | 3,561.81 | 03/15 | 1,485.88 | 03/25 | 3,064.65 |
| 03/04 | 3,046.81 | 03/16 | 1,385.88 | 03/26 | 3,269.65 |
| 03/08 | 3,544.31 | 03/18 | 12,053.22 | 03/29 | 2,428.73 |
| 03/09 | 3,273.31 | 03/19 | 1,939.33 | 03/30 | 1,871.33 |
| 03/11 | 3,181.94 | 03/22 | 4,532.53 | 03/31 | 1,841.38 |

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118



Page 1 of 4
Statement Period
04.01.10 through 04.30.10
1:0  P PE  0E 48        0128301
Enclosures 0
Account Number ███████

03099 001 SCM999 1 2 4 0

CAPITAL COLLISION
ERIC A HINOJOSA
4304 BURCH DR
DEL VALLE TX 78617-3273

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
With Online Banking you can also view up to 18 months of this statement online.
Enroll at www.bankofamerica.com/smallbusiness.

## Customer Service Information
### www.bankofamerica.com

For additional information or service, you may call:          Or you may write to:
1.888.BUSINESS (1.888.287.4637)                               Bank of America, N.A.
                                                              P.O. Box 25118
                                                              Tampa, FL 33622-5118

## Deposit Accounts

## Business Advantage Checking

### CAPITAL COLLISION   ERIC A HINOJOSA

### Your Account at a Glance

| | | | |
|---|---|---|---|
| Account Number | ███████ | Statement Beginning Balance | $0.00 |
| Statement Period | 04/01/10 through 04/30/10 | Amount of Deposits/Credits | $8,686.37 |
| Number of Deposits/Credits | 3 | Amount of Withdrawals/Debits | $8,716.32 |
| Number of Withdrawals/Debits | 6 | Statement Ending Balance | $29.95- |
| Number of Deposited Items | 0 | | |
| | | Average Ledger Balance | $9.74- |
| Number of Days in Cycle | 30 | Service Charge | $29.95 |

Your account has overdraft protection provided by Line of Credit number 6871 1022 401299.

Page 2 of 4
Statement Period
04/01/10 through 04/30/10
EO  P  PE  0E  48
Enclosures 0
Account Number

H

CAPITAL COLLISION
ERIC A HINOJOSA

## Your Business Advantage Pricing Relationship

| Account Name | Account Number | Qualifying ($) Balance | Type of Balance | Date |
|---|---|---|---|---|
| Business Advantage Checking | | -9.74 | Average | 04-29 |
| | Total Qualifying Balance | - $9.74 | | |

Based on your combined balance of $9.74-, your Business Advantage account has been charged a monthly maintenance fee. You can avoid this fee in the future by maintaining $35,000 in combined balances.

## Deposits and Credits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 04/01 | 70.05 | Online Banking transfer from Chk 4193 Confirmation# 3813438100 | 957104017596899 |
| 04/13 | 82.31 | Online Banking transfer from Chk 4193 Confirmation# 6217702175 | 957304137545894 |
| 04/19 | 8,534.01 | Online Banking transfer from Chk 4193 Confirmation# 1568911673 | 957204197556974 |

## Withdrawals and Debits

## Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 04/01 | 70.05 | BankCard          Des:Merch Fees ID:430134840051477 Indn:Capital Collision      Co ID:3210001923 Ccd | 902591009342190 |
| 04/13 | 35.00 | Overdraft Item Fee For Activity Of 04-12 Electronic Transaction | 934804120008265 |
| 04/19 | 35.00 | Extended Overdrawn Balance Charge | 971404190000102 |
| 04/19 | 8,464.01 | IRS            Des:Usataxpymt ID:270050900391617 Indn:Capital Collision Gp    Co ID:3387702000 Ccd | 902509010633189 |
| 04/30 | 29.95 | Monthly Maintenance Fee | |
| Card Account # | | : | |
| 04/12 | 82.31 | CheckCard  0410 Waterfront Restaurant | 905704101027032 |
| Subtotal | 82.31 | | |

## Total Overdraft Fees and NSF: Returned Item Fees

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $70.00 | $70.00 |
| Total NSF: Returned Item Fees | $0.00 | $0.00 |

H

Page 3 of 4
Statement Period
04/01/10 through 04/30/10
EO   P PE   OE 48                    0128303
Enclosures 0
Account Number ████████

CAPITAL COLLISION
ERIC A HINOJOSA

## Daily Ledger Balances

| Date | Balance ($) | Date | Balance ($) |
|------|-------------|------|-------------|
| 04/12 | 82.31 - | 04/19 | 0.00 |
| 04/13 | 35.00 - | 04/30 | 29.95 - |





Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

CAPITAL COLLISION GP
ERIC A HINOJOSA
4304 BURCH DR
DEL VALLE TX 78617-3273

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
With Online Banking you can also view up to 18 months of this statement online.
Enroll at www.bankofamerica.com/smallbusiness.

## Customer Service Information
### www.bankofamerica.com

For additional information or service, you may call:       Or you may write to:
1.888.BUSINESS (1.888.287.4637)                           Bank of America, N.A.
                                                          P.O. Box 25118
                                                          Tampa, FL 33622-5118

## Deposit Accounts

## Business Advantage Checking

### CAPITAL COLLISION GP  ERIC A HINOJOSA

### Your Account at a Glance

| | | | |
|---|---|---|---|
| Account Number | ███████████ | Statement Beginning Balance | $1,841.38 |
| Statement Period | 04/01/10 through 04/30/10 | Amount of Deposits/Credits | $15,241.47 |
| Number of Deposits/Credits | 5 | Amount of Withdrawals/Debits | $17,458.75 |
| Number of Withdrawals/Debits | 18 | Statement Ending Balance | $375.90- |
| Number of Deposited Items | 4 | | |
| | | Average Ledger Balance | $2,736.93 |
| Number of Days in Cycle | 30 | Service Charge | $29.95 |

Help avoid Overdraft & NSF: Returned Item fees. Use Alerts to get messages by email or text to inform you when your balance is low. Use Overdraft Protection to transfer available funds from linked savings, credit card, or credit line to your checking account to help cover items that would overdraw your account. Call us for details.

H

CAPITAL COLLISION GP
ERIC A HINOJOSA

## Your Business Advantage Pricing Relationship

| Account Name | Account Number | Qualifying Balance ($) | Type of Balance | Date |
|---|---|---|---|---|
| Business Advantage Checking | ███████████ | 2,809.84 | Average | 04-29 |
| | Total Qualifying Balance | 52,809.84 | | |

Based on your combined balance of $2,809.84, your Business Advantage account has been charged a monthly maintenance fee. You can avoid this fee in the future by maintaining $35,000 in combined balances.

## Deposits and Credits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 04/06 | 5,506.64 | Deposit | 813204730146319 |
| 04/16 | 7,645.00 | Counter Credit | 813204730364109 |
| 04/16 | 183.00 | Deposit | 813204730364111 |
| 04/26 | 1,763.31 | Deposit | 813204730379002 |
| 04/26 | 143.52 | Deposit | 813204730379004 |

## Withdrawals and Debits
### Checks

| Check Number | Amount ($) | Date Posted | Bank Reference | Check Number | Amount ($) | Date Posted | Bank Reference |
|---|---|---|---|---|---|---|---|
| 20178 | 2,032.60 | 04/07 | 813008892579215 | 20180 | 635.47 | 04/14 | 813009292043338 |
| 20179 | 82.50 | 04/19 | 813009992337563 | 20181 | 500.00 | 04/16 | 813204730341334 |

### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 04/01 | 70.05 | Online Banking transfer to Chk 9118 Confirmation# 3S13438100 | 957104017596898 |
| 04/02 | 550.00 | Leaf Bill Payment | 943204020005109 |
| 04/08 | 200.00 | Business Card Bill Payment | 943204080005117 |
| 04/13 | 82.31 | Online Banking transfer to Chk 9118 Confirmation# 6217702175 | 957304137545893 |
| 04/15 | 1,146.06 | 2 Pawnee Leasing Des:Lease Pmt ID:320955 Indn:Capital Collision G.P. Co ID:3840884553 Ppd | 902505010153924 |
| 04/15 | 500.00 | Home Depot Des:Online Pmt ID:560089433223077 Indn:Capital Collision Gp Co ID:Citicesweb Web | 902504008383098 |
| 04/16 | 100.00 | Dell Commercial Credit Bill Payment | 943204160005111 |
| 04/19 | 8,534.01 | Online Banking transfer to Chk 9118 Confirmation# 1568911673 | 957204197556973 |
| 04/20 | 675.09 | Barbara Pampalone Bill Payment | 943204200005112 |
| 04/26 | 663.31 | Trail Creek Inve Des:Note Pmt ID:Capital Collisi Indn:Capital Collision Co ID:3262646872 Ccd | 902513010940091 |
| 04/26 | 600.00 | Mbna Line Of Credit Bill Payment | 943204260005115 |
| 04/29 | 500.00 | Ge Money Des:Payment ID:504662014152661 Indn:Hinojosa,Eric Co ID:1061537262 Web | 902518006435221 |
| 04/30 | 557.40 | Marlin Leasing Bill Payment | 943204300005113 |
| 04/30 | 29.95 | Monthly Maintenance Fee | |



CAPITAL COLLISION GP
ERIC A HINOJOSA

## Total Overdraft Fees and NSF: Returned Item Fees

|  | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $35.00 |
| Total NSF: Returned Item Fees | $0.00 | $105.00 |

## Daily Ledger Balances

| Date | Balance ($) | Date | Balance ($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 04/01 | 1,771.33 | 04/13 | 4,413.06 | 04/20 | 67.93 |
| 04/02 | 1,221.33 | 04/14 | 3,777.59 | 04/26 | 711.45 |
| 04/06 | 6,727.97 | 04/15 | 2,131.53 | 04/29 | 211.45 |
| 04/07 | 4,695.37 | 04/16 | 9,359.53 | 04/30 | 375.90 - |
| 04/08 | 4,495.37 | 04/19 | 743.02 |  |  |

10

**Bank of America**



Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

01099 E01 SCM999          0

CAPITAL COLLISION GF
ERIC A HINOJOSA
4304 BURCH DR STE A4
DEL VALLE, TX  78617-3275

Our Online Banking service allows you to check balances, track account activity and more.
With Online Banking you can also view up to 18 months of this statement online.
Enroll at www.bankofamerica.com/smallbusiness.

### Customer Service Information
### www.bankofamerica.com

For additional information or service, you may call:          Or you may write to:
☎ 1.888.BUSINESS (1.888.287.4637)                          ✉ Bank of America, N.A.
                                                              P.O. Box 25118
                                                              Tampa, FL 33622-5118

We're improving the system that supports automatic transfers for deposit accounts which will change the
timing of certain automatic transfers. Effective April 23, when an automatic transfer between two of your
Bank of America accounts falls on a weekend or federal holiday, it will now occur the prior business
day. Please keep this change in mind when you schedule bill payments. Any other scheduled transfer
that falls on a weekend or federal holiday will continue to occur the following business day. Additionally,
you'll now be able to manage your transfers through Online Banking by going to the Transfers tab, as
well as by calling the number on this statement or visiting your nearby banking center.

Good News! In response to customer feedback we've made some changes to your statements to make
them easier to read. Soon you will notice color and graphics to highlight account details and draw
attention to notifications and special offers. Over the next few months, a guide will be included with your
new statement that will detail the enhancements. Stay tuned!

H

CAPITAL COLLISION GP
ERIC A HINOJOSA

## Deposit Accounts

## Business Economy Checking

CAPITAL COLLISION GP  ERIC A HINOJOSA

### Your Account at a Glance

| | | | |
|---|---|---|---|
| Account Number | [REDACTED] | Statement Beginning Balance | $15.46 |
| Statement Period | 04/01/13 through 04/30/13 | Amount of Deposits/Credits | $1,505.00 |
| Number of Deposits/Credits | 3 | Amount of Withdrawals/Debits | $1,498.18 |
| Number of Withdrawals/Debits | 4 | Statement Ending Balance | $22.28 |
| Number of Deposited Items | 2 | | |
| | | Average Ledger Balance | $574.45 |
| Number of Days in Cycle | 30 | | |

### Deposits and Credits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 04/01 | 1,300.00 | Deposit | 813008930688463 |
| 04/10 | 15.00 | Online Business Suite And Wire Transfer Refund Fdes Nmo 0006576 Nbksloz | 945004105761959 |
| 04/19 | 190.00 | Deposit | 813008930066384 |

### Withdrawals and Debits

### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 04/05 | 15.00 | Online Business Suite Acct Mgmt Services | 943204050129517 |
| 04/11 | 789.11 | Bank Of America · Line Of Credit Bill Payment | 943204110005312 |
| 04/19 | 675.00 | Burbara Pampalone Bill Payment | 943204190005310 |
| Card Account # | [REDACTED] | | |
| 04/02 | 19.07 | CheckCard  0401 Experian     °creditrepo | 905704011364961 |
| Subtotal | 19.07 | | |

### Daily Ledger Balances

| Date | Balance ($) | Date | Balance ($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 04/01 | 1,315.46 | 04/05 | 1,281.39 | 04/11 | 507.28 |
| 04/02 | 1,296.39 | 04/10 | 1,296.39 | 04/19 | 22.28 |

0015198



# How To Balance Your Bank of America Account

**FIRST, start with your Account Register/Checkbook:**

1. List your Account Register/Checkbook Balance here ........................................................ $ _____

2. Subtract any service charges or other deductions not previously recorded that are listed on this statement ........ $ _____

3. Add any credits not previously recorded that are listed on this statement (for example interest) ............ $ _____

4. This is your NEW ACCOUNT REGISTER BALANCE ................................................................ $ _____

**NOW, with your Account Statement:**

1. List your Statement Ending Balance here ................................................................... $ _____

2. Add any deposits not shown on this statement ............................................................. $ _____

SUBTOTAL ......................... $ _____

3. List and total all outstanding checks, ATM, Check Card and other electronic withdrawals

| Checks, ATM, Check Card, Electronic Withdrawals | | Checks, ATM, Check Card, Electronic Withdrawals | | Checks, ATM, Check Card, Electronic Withdrawals | |
|---|---|---|---|---|---|
| Date/Check # | Amount | Date/Check # | Amount | Date/Check # | Amount |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

4. TOTAL OF OUTSTANDING CHECKS, ATM, Check Card and other electronic withdrawals .................... $ _____

5. Subtract total outstanding checks, ATM, Check Card and other electronic withdrawals from Subtotal
   This Balance should match your new Account Register Balance ............................................ $ _____

Upon receipt of your statement, differences, if any, should be reported to the bank promptly in writing and in accordance with provisions in your deposit agreement.

## IMPORTANT INFORMATION FOR BANK DEPOSIT ACCOUNTS

**Change of Address.** Please call us at the telephone number listed on the front of this statement to tell us about a change of address.

**Deposit Agreement.** When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule, which contain the current version of the terms and conditions of your account relationship, may be obtained at our banking centers

**Electronic Transfers: In case of errors or questions about your electronic transfers**
If you think your statement or receipt is wrong or if you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
* Tell us your name and account number.
* Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
* Tell us the dollar amount of the suspected error.
For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation

**Reporting Other Problems.** You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or unauthorized transactions within the time periods specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree not to make a claim against us for the problems or unauthorized transactions.

**Direct Deposits.** If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled.

# Bank of America

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

01099 E01 SCH999     O

CAPITAL COLLISION GP
ERIC A HINOJOSA
4304 BURCH DR STE A4
DEL VALLE, TX  78617-3275

Our Online Banking service allows you to check balances, track account activity and more.
With Online Banking you can also view up to 18 months of this statement online.
Enroll at www.bankofamerica.com/smallbusiness.

**Customer Service Information**

www.bankofamerica.com

For additional information or service, you may call:     Or you may write to:
☎ 1.888.BUSINESS (1.888.287.4637)     ✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

Good News! In response to customer feedback we've made some changes to your statements to make them easier to read. Soon you will notice color and graphics to highlight account details and draw attention to notifications and special offers. Over the next few months, a guide will be included with your new statement that will detail the enhancements. Stay tuned!



P.O. Box 15284
Wilmington, DE 19850

Customer service information

Customer service: 1.888.BUSINESS

bankofamerica.com

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

CAPITAL COLLISION GP
ERIC A HINOJOSA
1950 RUTLAND DR
AUSTIN, TX 78758-5420

# Your Business Fundamentals Chk

for October 1, 2013 to October 31, 2013

Account number:

## Account summary

| | |
|---|---|
| Beginning balance on October 1, 2013 | $21.79 |
| Deposits and other credits | 6,050.00 |
| Withdrawals and other debits | -6,021.20 |
| Checks | -0.00 |
| Service fees | -0.00 |
| Ending balance on October 31, 2013 | $50.59 |

# of deposits/credits: 1

# of withdrawals/debits: 2

# of deposited items: 0

# of days in cycle: 31

Average ledger balance: $598.04

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

Change of address – Please call us at the telephone number listed on the front of this statement to tell us about a change of address.

Deposit agreement – When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our banking centers.

Electronic transfers: In case of errors or questions about your electronic transfers – If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

Tell us your name and account number.

Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.

Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems – You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree to not make a claim against us for the problems or unauthorized transactions.

Direct deposits – If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled.

© 2013 Bank of America Corporation

Bank of America, N.A. Member FDIC and ⌂ Equal Housing Lender



**Bank of America**

CAPITAL COLLISION GP | Account #█████████ | October 01, 2013 to October 31, 2013

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 10/22/13 | Deposit | 6,050.00 |
| **Total deposits and other credits** | | **$6,050.00** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 10/25/13 | Barbara Pampalone Bill Payment | -6,000.00 |
| Card account #███████████ | | |
| 10/02/13 | CHECKCARD 1001 EXPERIAN  *CREDITREPO 877-2847942 CA 24351783274003500053334 RECURRING CKCD 5968 4635720007146432 4635 7200 0714 6432 | -21.20 |
| Subtotal for card account #███████████ | | -$21.20 |
| **Total withdrawals and other debits** | | **-$6,021.20** |

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|------------|------|-------------|
| 10/01 | 21.79 | 10/22 | 6,050.59 | 10/25 | 50.59 |
| 10/02 | 0.59 | | | | |

This page intentionally left blank

11

6/8/2015 8:29:09 AM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-14-003207**

NO. D-1-GN-14-003207

| | | |
|---|---|---|
| BARBARA PAMPALONE, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ERIC HINOJOSA AND AUSTIN | § | |
| CAPITAL COLLISION, LLC, | § | |
| | § | |
| *Defendants.* | § | 419TH JUDICIAL DISTRICT |

## STIPULATION OF THE PARTIES

Plaintiff Barbara Pampalone and Defendants Eric Hinojosa and Austin Capital Collision, LLC, hereby agree and stipulate as follows:

1.      If Plaintiff is entitled to damages arising from default on the loan she has alleged, then the amount of damages is $56,758.68 as of June 8, 2015. This amount is calculated pursuant to the amortization schedule attached as Exhibit A to Plaintiff's Second Amended Petition, and is exclusive of attorneys' fees and other pleaded for relief.

2.      The attorneys' fees and costs incurred by Plaintiff through April 2015 total $44,950.30. This amount is established by the documents Bates-labeled BP_000403-BP_00431. These documents are preadmitted for the purposes of attorneys' fees testimony and the hourly rates reflected therein are reasonable. Further, Nelia J. Robbi may testify as to attorneys' fees in lieu of Plaintiff's designated testifying expert, Joe Lea. Ms. Robbi is qualified in all respects to present testimony as to attorneys' fees and costs on behalf of Plaintiff and may present direct testimony in the narrative form. This agreement shall not preclude Plaintiff from offering testimony and evidence as to attorneys' fees incurred and/or anticipated after April 2015.

3.      Any document produced by any Party in this lawsuit and used at trial as an exhibit by any Party shall be preadmitted; the Parties reserve relevancy objections. This agreement shall apply to

41

those documents which have been produced by the Parties as of the date of this stipulation.

4.    The Summary of Payments to Plaintiffs, attached hereto as Exhibit A, is a true and accurate reflection of the information it purports to summarize.

5.    There is no signed promissory note for the loan at issue in this lawsuit.

Respectfully submitted,

McGINNIS LOCHRIDGE
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6065
(512) 495-6093 (Fax)

By: _____
Joe Lea
State Bar No. 12082000
jlea@mcginnislaw.com
Nelia J. Robbi
State Bar No. 24052296
nrobbi@mcginnislaw.com
Jordan K. Mullins
State Bar No. 24070308
jmullins@mcginnislaw.com

ATTORNEYS FOR BARBARA PAMPALONE

SLATER PUGH, Ltd. LLP
8400 N. Mopac Expressway
Suite 100
Austin, Texas 78759
Telephone: (512) 472-7431
Telecopier (512) 472-0432

By: _____
Adam Pugh
State Bar No. 24044341
apugh@slaterpugh.com

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via facsimile and/or electronic mail on this the 5ᵗʰ June 2015 on the following:

Adam Pugh
8400 N. Mopac Expressway
Suite 100
Austin, Texas 78759
(512) 472-2431
(512) 472-0432 fax

_____
Nelia Robbi

3

43

# Exhibit A

CAUSE NO. D-1-GN-14-003207

| BARBARA PAMPALONE, | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ERIC HINOJOSA AND AUSTIN | § | |
| CAPITAL COLLISION, LLC, | § | |
| | § | |
| *Defendants*. | § | 419TH JUDICIAL DISTRICT |

## Summary of Payments to Plaintiff

| No. | Date | Amount | Bank Account |
|---|---|---|---|
| 1. | 05/20/2005 | $675.09 | |
| 2. | 06/20/2005 | $675.09 | |
| 3. | 07/20/2005 | $675.09 | Bank of America Business Advantage |
| 4. | 08/19/2005 | $675.09 | Checking Account No. XXXX XXXX |
| 5. | 09/20/2005 | $675.09 | 9118 |
| 6. | 10/20/2005 | $675.09 | |
| 7. | 11/18/2005 | $675.09 | Capital Collision |
| 8. | 12/20/2005 | $675.09 | Eric A. Hinojosa |
| 9. | 01/20/2006 | $675.09 | |
| 10. | 02/17/2006 | $675.09 | |
| 11. | 03/20/2006 | $675.09 | |
| 12. | 04/20/2006 | $675.09 | |
| 13. | 05/19/2006 | $675.09 | |
| 14. | 06/20/2006 | $675.09 | |
| 15. | 07/20/2006 | $675.09 | |
| 16. | 08/18/2006 | $675.09 | |
| 17. | 09/20/2006 | $675.09 | |
| 18. | 10/20/2006 | $675.09 | |
| 19. | 11/20/2006 | $675.09 | |
| 20. | 12/20/2006 | $675.09 | |
| 21. | 01/19/2007 | $675.09 | |
| 22. | 02/20/2007 | $675.09 | |
| 23. | 03/20/2007 | $675.09 | |
| 24. | 04/20/2007 | $675.09 | |
| 25. | 05/18/2007 | $675.09 | |
| 26. | 06/20/2007 | $675.09 | |
| 27. | 07/20/2007 | $675.09 | |
| 28. | 08/06/2007 | $505.07 | |
| | 08/20/2007 | $170.02 | |

| No. | Date | Amount | Bank Account |
|---|---|---|---|
| 29. | 09/20/2007 | $675.09 | |
| 30. | 10/19/2007 | $675.09 | |
| 31. | 11/20/2007 | $675.09 | |
| 32. | 12/20/2007 | $675.09 | |
| 33. | 01/18/2008 | $675.09 | |
| 34. | 02/20/2008 | $675.09 | |
| 35. | 03/20/2008 | $675.09 | |
| 36. | 04/18/2008 | $675.09 | |
| 37. | 05/20/2008 | $675.09 | |
| 38. | 06/20/2008 | $675.09 | |
| 39. | 07/18/2008 | $675.09 | |
| 40. | 08/20/2008 | $675.09 | |
| 41. | 09/19/2008 | $675.09 | |
| 42. | 10/20/2008 | $675.09 | |
| 43. | 11/20/2008 | $675.09 | |
| 44. | 12/19/2008 | $675.09 | |
| 45. | 01/20/2009 | $675.09 | |
| 46. | 02/20/2009 | $675.09 | |
| 47. | 03/20/2009 | $675.09 | |
| 48. | 04/20/2009 | $675.09 | |
| 49. | 05/20/2009 | $675.09 | |
| 50. | 06/19/2009 | $675.09 | |
| 51. | 07/20/2009 | $675.09 | |
| 52. | 08/20/2009 | $675.09 | |
| 53. | 09/18/2009 | $675.09 | |
| 54. | 10/20/2009 | $675.09 | |
| 55. | 11/20/2009 | $675.09 | |
| 56. | 12/20/2009 | $675.09 | |
| 57. | 01/20/2010 | $675.09 | |
| 58. | 02/19/2010 | $675.09 | |
| 59. | 03/19/2010 | $675.09 | Bank of America Business Advantage Checking Account No. XXXX XXXX 4193 |
| 60. | 04/20/2010 | $675.09 | |
| 61. | 05/20/2010 | $675.09 | |
| 62. | 06/18/2010 | $675.09 | |
| 63. | 07/20/2010 | $675.09 | |
| 64. | 08/20/2010 | $675.09 | Capital Collision GP |
| 65. | 09/20/2010 | $675.09 | Eric A. Hinojosa |
| 66. | 10/20/2010 | $675.09 | |
| 67. | 11/19/2010 | $675.09 | |
| 68. | 12/20/2010 | $675.09 | |
| 69. | 01/20/2011 | $675.09 | |
| 70. | 02/18/2011 | $675.09 | |
| | 03/--/2011 | -- | |
| | 04/--/2011 | -- | |

| No. | Date | Amount | Bank Account |
|---|---|---|---|
| | 05/--/2011 | -- | |
| 71. | 06/10/2011 | $675.00 | |
| 72. | 06/20/2011 | $675.00 | |
| 73. | 07/20/2011 | $675.00 | |
| 74. | 08/19/2011 | $675.00 | |
| 75. | 09/20/2011 | $675.00 | |
| 76. | 10/20/2011 | $675.00 | |
| 77. | 11/18/2011 | $675.00 | |
| 78. | 12/20/2011 | $675.00 | |
| 79. | 01/20/2012 | $675.00 | |
| 80. | 02/17/2012 | $675.00 | |
| 81. | 03/20/2012 | $675.00 | |
| 82. | 04/20/2012 | $675.00 | |
| 83. | 05/18/2012 | $675.00 | |
| 84. | 06/20/2012 | $675.00 | |
| 85. | 07/20/2012 | $675.00 | |
| 86. | 08/20/2012 | $675.00 | |
| 87. | 09/20/2012 | $675.00 | |
| 88. | 10/19/2012 | $675.00 | |
| 89. | 11/20/2012 | $675.00 | |
| 90. | 12/20/2012 | $675.00 | |
| 91. | 01/18/2013 | $675.00 | |
| 92. | 02/20/2013 | $675.00 | |
| 93. | 03/20/2013 | $675.00 | |
| 94. | 04/19/2013 | $675.00 | |
| | 05/--/2013 | | |
| | 06/--/2013 | | |
| | 07/--/2013 | | |
| | 08/--/2013 | | |
| | 09/--/2013 | | |
| 95. | 10/25/2013 | $6,000.00 | |

47